**DIRECT MAIL SPECIALISTS, INC.,**
**Plaintiff–Appellee,**

v.

**ECLAT COMPUTERIZED TECHNOLO-**
**GIES, INC., dba Computerized**
**Technology, Defendant–Appellant.**

**No. 87–5911.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided Feb. 24, 1988.

Hallen D. Rosner, San Diego, Cal., for defendant-appellant.

Richard M. Hymas, Salt Lake City, Utah, for plaintiff-appellee.

Before SNEED, PREGERSON and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

Eclat Computerized Technologies, Inc. ("Eclat") appeals the district court's refusal to vacate a default judgment entered against it in favor of Direct Mail Specialists, Inc. (DMS). We affirm.

## I. FACTS AND PROCEEDINGS BELOW

Eclat, a California corporation, sells a device that reduces energy consumption of home appliances. According to DMS, Eclat is associated with Computerized Technology (CT), a California partnership. DMS also claims that CT was to be a retailer of Eclat's product and that it was its "understanding" that CT was "part of Eclat and that in operating the retail outlets, Eclat was merely doing business as Computerized Technology." Affidavit of Jim Fotheringill, Vice–President of DMS, Supplemental Excerpt of Record at 9, ¶ 4. DMS prepared a marketing proposal entitled "A Marketing Proposal for Eclat." Eclat was apparently the entity that paid the bills submitted by DMS.

Either Eclat or CT entered into a contract with DMS, a Mississippi corporation, to market the energy saving device to consumers through mailings sent to residences in particular zip code areas. DMS claims that it carried out its duties under the contract and was paid consistently until a dispute arose leading to the present action. DMS claims it is owed $18,075 for services rendered.

Eclat denies its liability on the contract and claims that CT was a party to the contract, making it, if anyone, liable on the

contract. It claims that it was CT that stopped payment on checks issued to DMS. Thus, Eclat argues that it has a meritorious defense—CT owes the money, not Eclat.

DMS prepared a complaint and summons. The original complaint named CT as the defendant. Before having that complaint served, DMS learned that "the correct name of the company with whom DMS had been doing business and by whom the indebtedness was owed was Eclat Computerized Technologies, Inc. and that Eclat did business as Computerized Technology." Appellee's Brief at 6. The complaint was amended and DMS obtained a new summons from the clerk of the district court reflecting the amendment.

On October 16, 1986, a process server went to the building that served as the office for both Eclat and CT. The process server asked the receptionist, Raenell McSpadden, who was authorized to accept process for Eclat. She responded by saying no one was there. He then told her he needed to talk with the person in charge of the office. McSpadden replied, "I'm the only one here." He then left the complaint and summons with her and instructed her to give them to her superiors because "there was no one at Eclat's office at that time having more authority to handle the business of Eclat then (sic) she." Affidavit of Sean O'Connell, Process Server, Excerpt of Record at 53. The next day, October 17, 1986, the process server mailed copies of the complaint and summons to the address of Eclat and CT, although he apparently did not mail them to a specific person.

The day after the summons and complaint were delivered to Ms. McSpadden, Mr. Fotheringill, a vice president of DMS, had a telephone conversation with Mr. Bujkovsky, the president of Eclat. In the course of this conversation, according to Mr. Fotheringill's affidavit, Mr. Bujkovsky was "extremely upset and verbally abusive" and complained about having been served with process the day before. Excerpt of Record at 49. Thus, it appears that Mr. Bujkovsky, who is a lawyer, was aware of the attempt to serve Eclat.

On November 10, 1986, twenty-five days after leaving the summons with the receptionist, DMS filed a request for entrance of a default judgment and supporting affidavits. The clerk of court entered a default judgment on November 17, 1986. On January 23, 1987, DMS levied on Eclat's bank accounts pursuant to a writ of execution issued by the district court. On January 29, Eclat filed a motion to quash service and a motion to remove default. After a hearing the district court denied the motions and entered its decision on March 27. Eclat timely appealed on April 27, 1987.

## II. JURISDICTION

The district court had diversity jurisdiction per 28 U.S.C. § 1332 (1982). Eclat is a California corporation and DMS is a Mississippi corporation. The amount in controversy is over $10,000. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

## III. STANDARD OF REVIEW

 When the underlying facts are not disputed, a district court's determination that it possesses personal jurisdiction over a defendant is a question of law that is reviewed *de novo*. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). Review of a district court's denial of a motion to set aside a default judgment is reviewed for abuse of discretion. *Id.; Pena v. Seguros la Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985).

## IV. DISCUSSION

Appellant Eclat makes three arguments. First it insists that it was not properly served under the terms of Fed.R.Civ.P. 4. Therefore, it denies the district court ever had personal jurisdiction over it to enter the default judgment. Second, it contends that it had constructively "appeared" in the action and thus the clerk's entry of default and judgment was inappropriate. Third, appellant argues that the default should be vacated pursuant to Fed.R.Civ.P. 60(b) for surprise and fraud on the part of appellees. We consider these arguments in turn.

## A. *Proper Service Under Fed.R.Civ.P. 4*

■ A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed.R. Civ.P. 4. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir.1982). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984). Nonetheless, without substantial compliance with Rule 4 "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

Service on a corporation is proper if made pursuant to Fed.R.Civ.P. 4(d)(3) or 4(c)(2)(C)(i). *See* 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶ 4.22[1], at 4–185 (2d ed. 1987). The appellant claims that service was not proper under either provision and the appellee claims it was proper under both. We find service was proper under Rule 4(d)(3) and, therefore, will not discuss Rule 4(c)(2)(C)(i).

■ Rule 4(d)(3) states that service may be made on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." The appellee, DMS, does not contend that the receptionist precisely filled any of these roles. In fact, the appellant claims that she was not even an employee of Eclat (presumably she was an employee of CT). Several courts and commentators have reflected on what role a person must fill to be able to accept process for a company. Despite the language of the Rule, service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice. Thus, the service can be made "upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1251 (S.D. N.Y.1977); *Insurance Co. of N. Am. v. S/S "Hellenic Challenger"*, 88 F.R.D. 545, 547 (S.D.N.Y.1980). Generally, "[t]he determination of whether a given individual is a 'managing or general agent' depends on a factual analysis of that person's authority within the organization." 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶ 4.22[2], at 4–205 (2d ed. 1987).[1]

It is also true that actual receipt of process by the correct person may be a factor in finding process valid when there are other factors that make process fair. *Top Form*, 428 F.Supp. at 1251; *Nichols v. Surgitool, Inc.*, 419 F.Supp. 58, 63 (W.D.N. Y.1976). For example, in *Union Asbestos & Rubber Co. v. Evans Prods. Co.*, 328 F.2d 949 (7th Cir.1964), service on a secretary was held good but the court noted the extenuating circumstances that the defendant was out of the office 75–80% of the time and that the notice was immediately communicated to the defendant. *Id.* at 952–53. In *Top Form, supra,* service on a secretary was also found good but there she "was in practical effect, if not formal title, an assistant manager" of the company; thus she was well enough integrated in the organization to render service on her "fair, reasonable, and just." *Id.* at 1251.

■ These authorities mark out the path of our analysis. The company was a rather small one by Eclat's own admission. Presumably, the role played by the receptionist was commensurately large in the structure of the company. She appears to have been

---

1. For example, Professor Moore notes that a recipient of process need not even be an employee of a company to be its managing agent, as long as the person demonstrates apparent authority. 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *supra* at 4–201–04–202 n. 11.

the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her. With regard to actual notice, we note the uncontroverted affidavit of Mr. Fotheringill, the credit manager of DMS, who stated that Mr. Bujkovsky complained about the service of process the day after it was made. This evidence of actual receipt of process was bolstered by several statements of fact in the appellant's reply brief indicating that Eclat had actual knowledge no later than the day after service of process. Finally, we note that Mr. Bujkovsky, as a lawyer, should have been well aware of the danger of ignoring process and permitting a default judgment to be entered and taken.

For these reasons, we find service of process on the receptionist in the shared office of Eclat and CT is sufficient to create personal jurisdiction over Eclat under Rule 4(d)(3).

## B. *Eclat's "Appearance" in the Action*

■ Eclat's second argument turns on whether it ever "appeared" prior to the default judgment. The parties, however, assume that the issue of "appearance" goes to whether Eclat was entitled to three days notice of a default hearing under Fed. R.Civ.P. 55(b)(2). This is not a correct assumption because examination of the record shows that the default taken was a 55(b)(1) default, entered by the clerk, not a 55(b)(2) default entered by the court. The plaintiff's request for entry of default was on the clerk, *not* the court. Under Rule 55(b)(1) the clerk can enter the default if "the plaintiff's claim against a defendant is for a sum certain ... and if the defendant has been defaulted for failure to appear." "Thus, the rule applies only to parties who have never appeared in the action." 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2683, at 415 (2d ed. 1983). As already stated, the issue is whether Eclat appeared. If it did, a default entered by the clerk is void *ab initio*.

"Normally, an appearance in an action 'involves some presentation or submission to the court.'" *Id.* at 430. But because judgments by default are disfavored, "a court usually will try to find that there has been an appearance by defendant." *Id.* at 433. The appellant cites *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689 (D.C.Cir.1970), in which the court found an appearance when the parties had exchanged a number of letters and had a series of meetings, and neither party had any doubt that the suit would be contested if they did not reach a satisfactory settlement. In *Wilson v. Moore & Assocs., Inc.,* 564 F.2d 366 (9th Cir.1977), this court noted *H.F. Livermore* but declined to follow it when one letter was sent that was partially responsive to the complaint but there were no settlement negotiations. Thus, the court was "unwilling to hold that Moore's 'informal contacts' constituted the equivalent of a formal court appearance" for notice purposes. *Id.* at 369.

■ In this case, the defendant's actions did not demonstrate "a clear purpose to defend the suit." *Id.* Review of the affidavits in the record reveals that the only "settlement negotiations" were conducted prior to and on the day that the summons was served on Eclat. Thus, from the day after process was served on the receptionist there was apparently no contact between the parties. Moreover, it does not appear that the negotiations ever rose to the level of a "clear intention to defend" as they did in *H.F. Livermore.* The best Eclat can do is to point to a comment made by DMS's attorney at the hearing before the district court in which he stated that "at no time did Mr. Bujkovsky express an interest or intent to defend that lawsuit. In fact, *he said he would refer it to his attorney.*" Excerpt of Record at 10 (emphasis added). This comment is too slim a reed on which to build an "appearance." It clearly does not rise to the level this court required in *Wilson.* The most that can be gleaned from the record is that DMS knew that Eclat disagreed with the bill for services submitted by DMS. Thus, the appellants cannot claim that the judgment should fall because they "appeared" in the action.

Both parties, as indicated above, chose to argue about appearance under Rule 55(b)(2). Under that rule, the court may enter a judgment of default and "[i]f the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." Eclat seized on this requirement, overlooking the more fundamental 55(b)(1) under which notice is not necessary for the clerk to be able to enter a default (because there has never been an appearance). We find that entry of default by the clerk was appropriate because the appellants had never appeared, in fact or constructively, in this action.

### C. *Standard for Vacating Default Judgments*

Federal Rule of Civil Procedure 12(a) gives a defendant twenty days from the date of service of process to answer. If the defendant fails to respond within that time, a default judgment may be entered. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2682, at 407–08 (2d ed. 1983). Because service of process was proper under Rule 4(d)(3) the defendant had until November 5, 1986 to respond without risking a default judgment. The default was entered November 10, 1986. Thus, it was entered after the time that Eclat had to answer.

Appellants now request that this court vacate the default judgment below under Fed.R.Civ.P. 60(b). Under that rule, judgments may be vacated in a number of circumstances. The appellant's brief indicates that appellant is arguing surprise and fraud by the appellees.

■ We review the decision of the district court for abuse of discretion. We will reverse "only upon a *clear showing* of abuse of discretion." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); *Pena v. Seguros la Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir.1985). The court's discretion is limited by three considerations.

First, since Rule 60(b) is remedial in nature, it must be liberally applied. *Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir.1974). Second, default judgments are generally disfavored and cases should be decided on their merits. *Id.* Third, where defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment. *Id.*

*Meadows,* 817 F.2d at 521.

■ The district court may deny a Rule 60(b) motion, however, if (1) DMS will be prejudiced if the motion is granted, (2) Eclat has no meritorious defense, or (3) Eclat's culpable conduct led to the default. *Pena,* 770 F.2d at 815; *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984). We need not consider the first two factors because, as explained below, the defendant's culpable conduct was responsible for the entry of the default judgment in this case. *See Meadows,* 817 F.2d at 521; *Benny v. Pipes,* 799 F.2d at 494.

If a defendant "has received actual or constructive notice of the filing of the action and failed to answer" his conduct is culpable. *Meadows,* 817 F.2d at 521; *see Pena,* 770 F.2d at 815. Here, it is apparent that Eclat, through its president, Mr. Bujkovsky, had actual notice of the summons and complaint at the latest a day after it was served. Mr. Bujkovsky, as a lawyer, presumably was well aware of the dangers of ignoring service of process. For these reasons, we do not believe that the district court abused its discretion by refusing to vacate the default judgment.

AFFIRMED.