In re ROXFORD FOODS, INC., Debtor.

CIVIC CENTER SQUARE, INC.,
Plaintiff–Appellee,

v.

James M. FORD, as trustee of the Estate of Roxford Foods, Inc.,
Defendant–Appellant.

PURINA MILLS, INC.; James M. Ford, as trustee of the Estate of Roxford Foods, Inc., Plaintiffs–Appellants,

v.

CIVIC CENTER SQUARE, INC.,
Defendant–Appellee,

and

Roxford Foods, Inc., Debtor.

Nos. 92–16245, 92–16259.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided Dec. 20, 1993.

---

Claudia L. Greenspoon, Bronson, Bronson & McKinnon, Los Angeles, CA, for defendant-appellant.

Malcolm Leader–Picone and Debra Murphy Lawson, Kennedy & Wasserman, Oakland, CA, for plaintiffs-appellants.

David R. Jenkins, Lang, Richert & Patch, Fresno, CA, for plaintiff-appellee.

Before: CHOY, CANBY, and NOONAN, Circuit Judges.

CHOY, Circuit Judge:

This appeal arises out of an adversary proceeding brought in the bankruptcy case of Roxford Foods, Inc. (Roxford) by appellee Civic Center Square, Inc. (CCS). James M. Ford, as Trustee for Roxford (the Trustee), and Purina Mills, Inc. (Purina) appeal the decision of the district court affirming the bankruptcy court's Order Denying Motion to Vacate Judgment. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March of 1990, Roxford filed for Chapter 11 in bankruptcy. In order to facilitate the sale of certain of its real property and equipment, Roxford filed three motions, including a Joint Motion for Order Authorizing Distribution of Sale Proceeds. On April 6, 1990, Purina filed an objection to this motion, contending that distribution should not proceed without requiring Caisse Nationale de Credit Agricole ("Credit Agricole") and Farm Credit Leasing Services Corporation ("Farm Credit"), who held claims secured by the facilities, to draw down approximately $2.5 million under letters of credit. These letters of credit were issued on appellee CCS's application, and are secured by a deed of trust against a CCS building.

As a result of these objections and subsequent negotiations and stipulations, the bankruptcy court issued an order authorizing the sale of assets and the assumption of certain contracts (the "Sale Order"). Paragraph 11.2 of the Sale Order was included essentially to protect any marshalling rights of the estate and of creditors junior to Credit Agricole and Farm Credit, and to enable the bankruptcy court to require Credit Agricole and Farm Credit to draw down on the letters of credit should the court determine that such marshalling rights exist.

The Roxford bankruptcy was converted from Chapter 11 to Chapter 7 on June 7, 1990, and shortly thereafter appellant James M. Ford was named as trustee. Apparently the Trustee had difficulty obtaining counsel to represent him due to insufficient funds in the bankrupt estate, as well as the fact that because of the complexity of the case many Fresno law firms were already representing the numerous parties in the proceeding.

Between the appointment of the Trustee and October of 1990, several hearings in the bankruptcy proceeding were postponed to enable the Trustee to obtain counsel. Eventually the court issued an order stating that if the Trustee did not obtain counsel by December 14, 1990, certain claims against Purina and another creditor would be deemed abandoned.

Meanwhile, on September 19, 1990, CCS commenced the adversary proceeding from which this appeal was taken, by filing a complaint seeking a declaratory judgment determining whether the named defendants could marshal the Credit Agricole and Farm Credit liens. This complaint was filed in the same bankruptcy court as the underlying pending bankruptcy. The complaint named the Trustee and other parties that CCS believed had the potential to assert marshalling rights as defendants. It did not name Purina because Purina's lien attached within 90 days of the Roxford petition, and therefore CCS contends it had been terminated under California Code of Civil Procedure § 493.030(b).[1]

On September 21, 1990, all defendants in the declaratory relief action, including the Trustee, were served the summons and complaint by mail at their correct addresses, pursuant to Rule of Bankruptcy Procedure 7004(b)(1). Summons and proofs of service were filed on September 24, 1990. On November 1, 1990, CCS sent the Trustee a letter advising him to respond within five days or face default. The Trustee never responded to this letter. At the pretrial

---

1. CCS filed a separate declaratory relief action against Purina and other similarly situated Roxford creditors. Summary judgment was granted in favor of CCS. An appeal was taken, but it was dismissed because CCS, at the request of Purina, executed a stipulation to dismiss the appeal on the ground that the order appealed from was not a final order.

conference, on November 19, 1990, the Trustee did not appear, and the court granted CCS's request to take default. On November 26, 1990, CCS served the Trustee a proposed entry of default by mail, to which the Trustee did not respond. On December 4, 1990, a formal order of default was signed by the court, and on December 13, 1990, notice of entry of default was entered and the clerk's office was served.

The Trustee claims that he does not recall receiving the summons and complaint, or any notice of the intent of CCS to seek default, or any pleading in the adversary proceeding.

In the meantime, on November 30, 1990, Purina notified all parties in the underlying bankruptcy action, including CCS, that the Trustee proposed to retain Cindy Dennis of Dennis, Shafer, Fennelly & Creim ("DSF & C") as counsel. CCS responded by a letter on December 6, 1990, stating that retention of DSF & C as counsel was not appropriate, because Purina would be paying for the representation. According to CCS this created a conflict of interest if Purina asserted marshalling rights independent of the Trustee. On December 14, 1990, Purina responded with a letter to DSF & C and all parties stating that it was their position that it would be appropriate for the Trustee to pursue the marshalling claim. DSF & C was appointed as counsel for the Trustee on January 24, 1991, and notice of this was served on all parties.

On March 25, 1991, CCS filed a motion in the declaratory judgment action for summary judgment against all defendants. In reliance on the entry of default, CCS never served this motion on the Trustee or DSF & C, the counsel the Trustee had retained in the underlying bankruptcy proceeding. On April 25, 1991, summary judgment with respect to answering defendants and default judgment with respect to the Trustee was entered in favor of CCS, with no sustainable opposition offered by any party. The judgment made three determinations: (1) The letters of credit were not assets of the debtor; (2) Marshalling was not available against the letters of credit as to any defendant; and (3) No facts existed to support a claim of equitable subordination against CCS.

On June 14, 1991, the Trustee timely filed a motion to vacate the declaratory judgment under Fed.R.Civ.P. 60(b). Purina also moved to vacate the judgment. The bankruptcy court struck Purina's motion for lack of standing, and granted the portion of the Trustee's motion seeking to vacate the judgment pertaining to equitable subordination, but denied the Trustee's motion to vacate the rest of the judgment. On appeal, the district court affirmed the Order Denying Motion to Vacate Judgment.

## II. DISCUSSION

### A. The Automatic Stay was not Violated:

The Trustee asserts that the declaratory judgment should be vacated as void pursuant to Rule 60(b) because the adversary proceeding was commenced in violation of the automatic stay, under 11 U.S.C. § 362. The bankruptcy court rejected this argument as inapplicable, because the declaratory relief sought "merely seeks to establish what is or is not property of the estate," rather than an attempt to obtain property from the estate. The district court also rejected this argument, but on a different ground. The court relied on *In re North Coast Village, Ltd.*, 135 B.R. 641 (9th Cir. BAP 1992), which held that the stay did not apply to proceedings against the debtor commenced in the same bankruptcy court where the debtor's bankruptcy was pending. *Id.* at 643–44. The district court noted that *In re North Coast Village* followed this court's holding in *In re Teerlink Ranch Ltd.*, 886 F.2d 1233, 1237 (9th Cir.1989), where this court held that "[t]he stay does not operate against the court with jurisdiction over the bankrupt."

Our decision on this issue is controlled by our decision in *Teerlink Ranch*, where this court found the automatic stay inapplicable to a suit commenced in the same court where the bankruptcy was pending. Therefore, the district court was correct in finding that the declaratory judgment is not void on this ground, as it was not commenced in violation of the automatic stay.

**B. Failure to give 55(b)(2) Notice:**

 The Trustee contends that the declaratory judgment should be vacated pursuant to Fed.R.Civ.P. 60(b) because it is void for lack of notice under Fed.R.Civ.P. 55(b)(2).[2] The standard of review for the denial of a 60(b) motion is for an abuse of discretion. *In re Hammer,* 940 F.2d 524, 525 (9th Cir.1991). The discretion of the court is limited by three policy considerations. First, because of the remedial nature of Rule 60(b), it must be liberally applied. Second, because default judgments are disfavored, cases should be decided on their merits if possible. Thirdly, so long as relief is timely sought, and there is a meritorious defense, any doubt should be resolved in favor of setting aside a default judgment. *Wilson v. Moore and Assocs., Inc.,* 564 F.2d 366, 368 (9th Cir.1977).

Fed.R.Civ.P. 55(b)(2) provides in part:

If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

The Trustee contends that because he was never given notice of the hearing on CCS's motion for summary judgment[3], the resulting declaratory judgment should be vacated.

 While it is true that "[t]he failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so," *Wilson,* 564 F.2d at 369, notice is only required where the party has made an appearance. "The appearance need not necessarily be a formal one, *i.e.,* one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit." *Id.*

 The record clearly shows that the Trustee never formally appeared in the ad-

versary proceeding. Additionally, the Trustee never informally responded directly to the complaint. The Trustee did make informal contacts with CCS and other parties involved in regards to the underlying bankruptcy action, which directly related to the issue decided in the adversary proceeding. CCS was fully aware of the Trustee's posture in regards to the bankruptcy action. At issue here then, is whether or not the Trustee's contacts with CCS in regard to the related bankruptcy action constituted sufficient contacts demonstrating a clear purpose to defend the declaratory judgment action, such that it may be deemed an "appearance" for the purpose of Fed.R.Civ.P. 55(b)(2).

The benchmark case with regards to Rule 55(b)(2) is *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970). In that case, the parties had engaged in both written and oral settlement discussions following the service of the complaint, after which the plaintiff filed a motion for default judgment, without any indication to the defendant of his intention to do so. The court found that the defendant's settlement attempts demonstrated a clear purpose to defend, and reversed the district court's denial of a motion to vacate.

In *Wilson,* we distinguished *Livermore* in finding that the defendant had not made an appearance. In that case, the defendant sent two letters to plaintiff's counsel in response to the complaint and summons, setting forth certain facts which could be construed as a defense to the complaint. A copy of one of the letters was sent to the Clerk of the District Court of Hawaii. After each letter, the plaintiff's counsel responded by suggesting that the defendant retain counsel, and stating that they would seek default if a timely answer was not filed. Under these facts we found that *Livermore* was distinguishable, and declined to reverse the denial of a motion to vacate. Basing the decision on the absence of settlement negotiations, the two warnings given by plaintiff that the de-

---

**2.** Rule 55 is applicable to the bankruptcy court declaratory judgment proceedings. *See* Bankruptcy Rule 7055.

**3.** This motion was in essence an "application to the court for default judgment" under Rule 55(b)(2) with respect to the Trustee against whom default had previously been entered.

fendant should seek counsel, and the two warnings of plaintiff's intent to seek default, we were "unwilling to hold that Moore's 'informal contacts' constituted the equivalent of a formal court appearance requiring strict 55(b)(2) notice." *Wilson,* 564 F.2d at 369.

As evidence of an intent to defend the declaratory judgment action, the Trustee first cites the fact that CCS named him as a defendant in the complaint. This cannot be construed as evidence of an appearance, otherwise any defendant would be deemed to have appeared.

The Trustee then refers to communications between CCS and the Trustee regarding the Trustee's proposed retention of counsel, and CCS's subsequent objections thereto. First, on November 30, 1990, CCS was sent a copy of a letter indicating that the Trustee had retained Cindy Dennis, who would represent the estate in the bankruptcy proceeding. Then, on December 6, 1990, CCS sent a letter objecting to the retention of Cindy Dennis. The objection was based on a potential conflict of interest due to the fact that Purina was paying for this representation, combined with Purina's interest in asserting independent marshalling rights. Finally, on December 14, 1990, CCS received a copy of a letter from Purina to Cindy Dennis advising that it was Purina's position that "it would be most appropriate for the trustee to pursue the marshalling claim."

The district court found that these facts were similar to those in *Wilson,* and that these contacts were not enough to constitute an "appearance".

It is true that the facts above, if viewed in isolation, are not enough to indicate a clear intention to defend, such as to constitute an appearance to trigger Rule 55(b)(2) notice. It is unclear, however, whether the district court adequately considered the underlying bankruptcy action. While we have never considered whether an appearance is made by formally appearing in a related case, other courts have held that where a party has appeared in a closely related or identical case, it constitutes an appearance such as to require Rule 55(b)(2) notice.

For instance, in *Turner v. Salvatierra,* 580 F.2d 199 (5th Cir.1978), the court found that two complaints were sufficiently identical that an answer to the first constituted an appearance in the second such as to require 55(b)(2) notice. The plaintiff in that case was notified that his case would be dismissed without prejudice for lack of prosecution if he did not file an affidavit showing good cause for lack of diligence. On the day the affidavit was due, the plaintiffs moved for an entry of default, and on that same day the defendant filed an answer and an affirmative defense. The court dismissed the complaint for lack of prosecution. When the plaintiff filed a new complaint, which was given the same docket number, the defendant did not respond for four months, resulting in an entry of default, followed by a default judgment. On appeal, the court vacated the default judgment, finding that the defendant's answer to the first complaint constituted an appearance, since the two cases were really "one and the same," *id.* at 201, and thus Rule 55(b)(2) notice of the hearing for default judgment was required.

A similar holding was made by the district court in *Press v. Forest Lab., Inc.,* 45 F.R.D. 354 (S.D.N.Y.1968). In that case, three different actions were commenced by the plaintiff against the defendants over a ten year period, two of which were in federal court. In the first federal action, the plaintiff attempted to amend his complaint to add other defendants, including the current defendant's attorney. When this was denied by the court, the plaintiff initiated the second action while the first action was still pending. The second complaint was identical to the first except that it named the defendant's attorney and contained additional allegations against defendant's attorney for unethical conduct and libel. Rather than respond to the second complaint, the attorney answered only the first complaint, and commenced a proceeding against plaintiff's attorney before the Grievance Committee of the Bar Association. Default judgment was entered against defendants for failure to respond to the second complaint. On a motion to vacate the default judgment, the district court held that the two actions were really one and the same, and that the dispute in the second

grew out of the same activity as the first. Therefore, the court held that the contacts in regard to the first action constituted an appearance in the second action. *Id.* at 356–57.

The case at bar is distinguishable from *Wilson* because of the Trustee's posture in the original bankruptcy action. Both cases were assigned the same docket number, and the right to marshal the letters of credit was an issue in both cases. We find that the claims in the bankruptcy action were sufficiently identical such that the Trustee's contacts with CCS in regards to that proceeding were sufficient to constitute an appearance in the declaratory judgment action.

Additionally, up to the time that CCS filed for entry of default, they were aware that the Trustee was attempting to procure counsel. Several hearings were set in the underlying bankruptcy proceeding during the period from May to October of 1990, but were continued for the express purpose of allowing the Trustee to obtain counsel. Subsequently, the court entered an order providing that if the Trustee did not obtain counsel by December 14, 1990, certain claims against Purina and another creditor would be abandoned. Yet the formal order of default in the declaratory judgment action was signed by the court on December 4, 1990, and entered on December 13, 1990.

The concerns raised by CCS in its letter to the Trustee, dated December 6, 1990, clearly indicate that CCS was aware that the Trustee intended to pursue marshalling claims on behalf of the estate. The letter states that Purina's assertion of marshalling rights independent of the estate would "apparently diminish to zero any potential claims of the estate." This would only be true if the Trustee intended to assert the marshalling rights, and yet this letter was sent after CCS had taken the Trustee's default (but before filing for summary judgment). Once the Trustee did retain counsel, no notice concerning the adversary proceeding was ever sent to the Trustee or his counsel.

Because Rule 60(b) is remedial, discretion of a district court to deny a 60(b) motion is limited by significant policy considerations. In a case such as this "[w]here timely relief is sought from a default judg-

ment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir.1974) (quoting 7 Moore's Federal Practice ¶ 60.19). Because of the Trustee's default, the issue of the estate's right to require marshalling of the letters of credit has never been decided on the merits. Any doubt as to whether or not the Trustee's actions in the underlying bankruptcy proceeding constituted an appearance in the adversary proceeding should be resolved in favor of finding that the Trustee did make an appearance so as to require 55(b)(2) notice.

In addition, "bankruptcy itself is an equitable proceeding in which equity operates within the terms of the bankruptcy code." *In re J.F. Hink & Son,* 815 F.2d 1314, 1318 (9th Cir.1987). By filing an adversary proceeding while CCS knew that the Trustee was having difficulty retaining counsel, without naming any other party who had a sustainable interest in requiring marshalling of the letters of credit, CCS managed to obtain a default judgment against the Trustee without any opposition. Once the Trustee had retained counsel, neither he nor his counsel was ever given notice of the hearing that ultimately decided that no marshalling rights existed. It would be more equitable if the default judgment were vacated so that the case may be decided on its merits.

We therefore hold that the Trustee did make an appearance in the declaratory judgment action, triggering the requirement of Rule 55(b)(2) notice. Because no such notice was given, we reverse the district court's contrary holding, and vacate the bankruptcy court's declaratory judgment in so far as it applies to the Trustee. "Absent special circumstances, the failure to give necessary notice will require that the default judgment be set aside where attacked on direct appeal or by a motion to vacate the judgment." 6 Moore's Federal Practice, ¶ 55.05[3] at 55–39 (1993). *See also Wilson,* 564 F.2d at 369. No such special circumstances exist here. Therefore, the failure to give required Rule 55(b)(2) notice violated

due process, and the judgment should be vacated. *Cf. In re Center Wholesale, Inc.,* 759 F.2d 1440, 1448–49 (9th Cir.1985) (failure to give proper notice required by Bankruptcy Code before hearing allowing debtor to use cash collateral violated due process).[4]

The district court judgment is RE-VERSED and the bankruptcy court declaratory judgment is VACATED IN PART.

---

**4.** Because we reverse on the ground that the Trustee appeared in the action such as to require Rule 55(b)(2) notice, we need not reach the Trustee's other contention that the district court erred in failing to vacate the judgment based on excusable neglect under Fed.R.Civ.P. 60(b). In addition, we need not decide whether appellant Purina has standing to move to vacate the judgment under Rule 60(b), as that issue is rendered moot by our decision.