**FRANCHISE HOLDING II, LLC, a Delaware limited liability company,**
**Plaintiff–Appellee,**

v.

**HUNTINGTON RESTAURANTS GROUP, INC., a Texas corporation; Golden Management, Inc., a Florida corporation; Richard P. Beattie, an individual; Michelle Beattie, an individual, Defendants–Appellants.**

No. 03–15434.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2004.

Filed July 20, 2004.

Robert J. Stumpf, Jr., Sheppard Mullin Richter & Hampton LLP, San Francisco, CA, for the appellants.

Kristin Linsley Myles, Munger, Tolles & Olson LLP, San Francisco, CA, for the appellee.

Before: SCHROEDER, Chief Judge, TALLMAN, and CALLAHAN, Circuit Judges.

CALLAHAN, Circuit Judge:

Huntington Restaurants Group, Inc., Richard P. Beattie and Michelle Beattie (collectively, "HRG") appeal the district court's denial of their motion to set aside an entry of default and a default judgment. While the law favors deciding disputes on the merits, the district court's decision here to deny HRG's motion to set aside the entry of default and default judgment was squarely within its discretion. Fur-thermore, the district court clerk had the authority to enter the default judgment. For these reasons, we affirm.[1]

*Background*

This case arises out of HRG's default on four related loans. In July 2000, Atherton Capital (Franchise Holding's predecessor-in-interest) lent Huntington Restaurants Group, Golden Management, Inc., and another entity nearly $20 million. Richard P. Beattie and Michelle Beattie personally guaranteed those loans. HRG secured the loans with various Denny's restaurants in Georgia and Florida, which HRG or Golden Management owned. Atherton later assigned the loans to Franchise Holding II, LLC ("Franchise Holding").

The terms of the loans obligated HRG to make payments every month until paid off. Within less than a year, business difficulties arose and HRG defaulted. Franchise Holding responded by exercising its right under the loan to declare the balance of the loan immediately due and payable. HRG made no further payments. In June 2001, HRG and Franchise Holding began negotiating a workout arrangement, which ultimately proved unsuccessful.

Franchise Holding then brought a diversity action against HRG in the United States District Court for the District of Arizona. The complaint alleged, in part, a breach of contract and a breach of guarantee. It also alleged that, as of December 20, 2001, defendants owed Franchise Holding $27,954,521.38.

Franchise Holding properly served the various defendants between February and March 2002. On March 4, 2002, William Miller, HRG's Arizona counsel, executed an Acceptance/Acknowledgment of Service

---

1. Franchise Holding sought to strike from the record certain declarations. HRG's counsel conceded this point at oral argument. We thus grant Franchise Holding's motion.

of the summons and complaint on behalf of HRG.

The parties attempted to negotiate a settlement, but the negotiations began to sour, at least from Franchise Holding's perspective. Accordingly, Franchise Holding sent a letter, dated April 18, 2002, to HRG stating that, because of a break down in negotiations, it had "no choice but to pursue all of their rights and remedies, including (among others) pursuing foreclosure sales on the earliest available dates and promptly prosecuting all existing litigation." Several days later, on April 23, 2002, Franchise Holding filed an Application for Entry of Default against HRG. The district court clerk entered default the same day.

Approximately seven months later, on December 12, 2002, Franchise Holding filed an Application for Entry of Default Judgment against HRG. It asked for $24,874,870.09 on the grounds that HRG had failed to appear or otherwise defend the action and that this claim was for a "sum certain." The district court clerk entered a default judgment for the requested amount, plus interest, on January 27, 2003. On March 12, 2003, Franchise Holding began collecting upon the judgment by applying for writs of garnishment against HRG.

That same day, HRG made its first filing in the district court, a motion to set aside the entry of default and the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b), respectively.[2] HRG claimed that (a) setting aside the default would not prejudice Franchise Holding, (b) HRG had a defense to the default judgment amount, (c) HRG's default in the district court was excusable, and (d) the clerk lacked jurisdiction to enter the default. In support of this motion, HRG submitted declarations from its lawyers stating that HRG and Franchise Holding had an understanding that, so long as negotiations were continuing in good faith, the Arizona action would not proceed. Franchise Holding countered with affidavits that no such understanding existed.

On March 13, 2003, the district court held a telephonic hearing. At the conclusion of the hearing, the court denied HRG's motion to set aside the default. HRG now appeals. This court subsequently granted a motion to stay enforcement of the default judgment. We now affirm the district court and vacate our stay.

*Discussion*

1. *HRG's Rule 55(c) motion to set aside the entry of default*

■ Rule 55(c) provides that a court may set aside a default for "good cause shown." We review the district court's factual findings for clear error and, if those findings are not clearly erroneous, we review the court's decision to deny HRG's Rule 55(c) motion for an abuse of discretion. *See Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1391 (9th Cir. 1989).

■ The "good cause" standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). *See TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696 (9th Cir. 2001). The good cause analysis considers three factors:

---

**2.** Unless otherwise stated, all further references to a "Rule" or "Rules" are to the Fed-

eral Rules of Civil Procedure.

(1) whether HRG engaged in culpable conduct that led to the default; (2) whether HRG had a meritorious defense; or (3) whether reopening the default judgment would prejudice Franchise Holding. *See id.* As these factors are disjunctive, the district court was free to deny the motion "if any of the three factors was true." *American Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1108 (9th Cir. 2000).

HRG bore the burden of showing that any of these factors favored setting aside the default. *See TCI Group,* 244 F.3d at 697. The district court found that HRG failed to meet its burden regarding all three. We review each in turn.

### a. Culpability

The district court found that, due to the high stakes involved, HRG's failure to seek an extension of time for filing a responsive pleading went to HRG's "culpable conduct." HRG disputes this, arguing that the parties had reached a side-agreement to extend the filing deadlines while the parties were in negotiations. Franchise Holding denies that such an agreement ever existed. Unfortunately for HRG, even if the parties did enter into a side-agreement, HRG remains culpable for the entry of default.

■ The side-agreement alleged by HRG provided that Franchise Holding would not pursue litigation while negotiations were continuing in good faith. Franchise Holding, however, explicitly warned HRG that negotiations had broken down and that it was proceeding with litigation. Thus, under the terms of the alleged side-agreement, HRG was on notice that Franchise Holding would pursue litigation. HRG nevertheless failed to file anything with the district court until after Franchise Holding began collecting on the default judgment. If a defendant "has received actual or constructive notice of the filing of the action and failed to answer," its conduct is culpable. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 690 (9th Cir.1988) (quoting *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.1987)).

The district court's denial on culpability grounds of HRG's motion was therefore within its discretion.

### b. Meritorious Defense

■ The district court reasoned that HRG "had conceded the question of liability," which went "a long way to suggesting that at least as to liability the defendant has no meritorious defense." HRG now contends that while it may have conceded liability, it nevertheless contested the extent of the deficiency owed. To justify vacating the default judgment, however, HRG had to present the district court with specific facts that would constitute a defense. *See Madsen v. Bumb,* 419 F.2d 4, 6 (9th Cir.1969). HRG never did this. Instead, it offered the district court only conclusory statements that a dispute existed. A "mere general denial without facts to support it" is not enough to justify vacating a default or default judgment. *Id.*

Thus, denying HRG's motion on the second factor was well within the district court's discretion.

### c. Prejudice

Franchise Holding argued below that any delay in judgment would allow HRG to move and hide assets. The district court agreed, stating that "there certainly is the possibility" that setting aside the default judgment would prejudice Franchise Holding. HRG disputes this finding, maintaining that it is willing and able to settle any dispute. HRG's behavior suggests other-

wise. It has not made a single payment in two years. It filed no pleadings with the district court until after the clerk entered the default.

Accordingly, we conclude that the district court did not abuse its discretion by denying HRG's motion on the ground that any further delay would prejudice Franchise Holding.

### d. Excusable Neglect

■ HRG alternatively argues that the district court should have set aside the default judgment under Rule 60(b) for excusable neglect. Excusable neglect is an equitable concept that takes account of factors such as "prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *TCI Group*, 244 F.3d at 696 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). This argument, therefore, largely overlaps with the issue of culpability.[3] *See id.* at 696–97. Because "good cause" is typically enough to demonstrate "excusable neglect," no reason exists to analyze these criteria separately. *Id.* at 696.

■ Therefore, for similar reasons to those discussed above concerning good cause, we conclude that HRG did not establish excusable neglect.[4] The entry of default and the default judgment were squarely within HRG's control. HRG re-

ceived actual notice of both the action and Franchise Holding's intent to pursue it. HRG nevertheless failed to file an extension or anything else with the district court until Franchise Holding began to collect on the default judgment.

The district court thus did not err in denying HRG's Rule 60(b) motion.

### 2. District Court Clerk's Authority to Enter a Default Judgment

HRG argues that the district court clerk lacked authority under Rule 55(b)(1) to enter the default judgment. Rule 55(b)(1) states that a district court clerk can enter a default judgment only if "the plaintiff's claim against a defendant is for a sum certain ... and if the defendant has been defaulted for failure to appear." HRG contends that it had "appeared" in the action and that Franchise Holding's claim was not for a "sum certain." Neither of these two contentions succeed.

### a. Failure to Appear

■ As noted above, Rule 55(b)(1) "applies only to parties who have never appeared in the action." *See Direct Mail*, 840 F.2d at 689 (citation omitted). Therefore, if HRG appeared, the clerk's entry of default is void *ab initio*. *See id.* "Normally, an appearance in an action involves some presentation or submission to the court .... [b]ut because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Id.* (citation and internal quotation marks omitted).

---

**3.** We note that HRG does not contend that its attorney's actions constituted "gross negligence" as discussed in *Community Dental Serv. v. Tani*, 282 F.3d 1164, 1172 (9th Cir. 2002) (holding that an attorney's grossly negligent conduct entitles the client to relief under Rule 60(b)(6)).

**4.** As with the district court's denial of HRG's motion to set aside a default, we review the district court's denial of HRG's motion to set aside a default judgment for an abuse of discretion. *See Alan Neuman Prods.*, 862 F.2d at 1391 (noting the same abuse of discretion standard for a Rule 55(c) and Rule 60(b) motion).

HRG and Franchise Holding each cite several cases that have previously examined this issue. None of those cases directly mirror the facts of this case. Nevertheless, the cases cited by the parties each suggest that the district court did not err in concluding that HRG had not "appeared" in this action.

In *Direct Mail*, for instance, we found that a party had not appeared where the parties had ceased their settlement negotiations once the plaintiff served a summons on the defendant. *Direct Mail*, 840 F.2d at 689; *see also Benny v. Pipes*, 799 F.2d 489, 493 (9th Cir.1986) (holding that defendants had not appeared despite filing three motions for an extension of time to answer the complaint). Similarly, in *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369 (9th Cir.1977), we held that an informal letter was not the equivalent of a formal court appearance where the plaintiff provided actual, unqualified notice that a delay in answering the complaint would result in default. Of particular significance here, the defendant in *Wilson* (unlike the defendant in the present case) sent a copy of this letter to the district court. *Id.* at 367.

Conversely, courts have found that a defendant did appear where it evidenced an intent to defend itself. For example, the D.C. Circuit held that a defendant had appeared where a series of extended settlement discussions demonstrated the party's intent to defend the suit. *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 692 (D.C.Cir.1970). In reaching this conclusion, however, the D.C. Circuit explicitly noted that the plaintiff had admittedly concealed its intent to pursue litigation for fear of stimulating the defendant into defending itself. *Id.* In *Civic Center Square, Inc. v. Ford (In re Roxford Foods, Inc.)*, 12 F.3d 875, 880–81 (9th Cir.1993), we held that a party had

appeared where it was actively defending itself in a closely related case in the same court, with the same docket number. Notably, the plaintiff in that case filed the adversary proceeding, which resulted in the default, while it knew that the defaulting party was having difficulty retaining counsel. *Id.*

Applying these cases to this appeal, we conclude that HRG did not appear in the present action. HRG had counsel and was on notice that Franchise Holding intended to pursue litigation. Nevertheless, unlike the defaulter in *Direct Mail*, HRG did not file an extension of time, or any other motion, with the district court. Furthermore, unlike the defaulter in *Wilson*, HRG never copied the district court on correspondence outlining its defense to opposing counsel. Despite the amount of money at stake and Franchise Holding's warning that it was about to pursue litigation, HRG made no effort to preserve its interests in the district court until Franchise Holding began collecting on the default judgment.

On this record, we conclude that HRG did not evidence any attempt to defend itself and thus did not appear in the district court.

### b. *Sum Certain*

■ In addition to the appearance requirement, a district court clerk can enter a default judgment only if "the plaintiff's claim against a defendant is for a sum ... which can by computation be made certain." Fed.R.Civ.P. 55(b)(1). Unfortunately, "the cases discussing the sum certain requirement of Rule 55 are few and far between and rather exiguous in their reasoning." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 n. 7 (1st Cir.2003) (quoting *Collex, Inc. v. Walsh*, 74 F.R.D. 443, 450 (E.D.Pa.1977)); *see also Byrd v. Keene Corp.*, 104 F.R.D. 10, 12 (E.D.Pa.1984) (stating that "[r]ela-

tively few cases have raised the question of what qualifies as a 'sum certain' for the purposes of Rule 55(b)"). Noting this paucity of federal case law, the First Circuit in *KPS & Assocs.* looked to state courts whose rules of procedure mirror the Federal Rules. This led the court to conclude that a claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default. *Id.* at 19. The First Circuit ultimately concluded that the particular claim before it was not a sum certain because the complaint and supporting affidavits, which were internally inconsistent, did not set forth a claim capable of simple mathematical computation. *Id.* at 20.[5]

Applying the First Circuit's approach to the facts of this case, we conclude that no doubt remained as to the amount to which HRG's default entitled Franchise Holding. Franchise Holding presented the clerk with loan documents that set forth the specific formulas for determining the amount owed. It also provided documents setting forth the various amounts necessary for calculating the total amount due. While HRG takes issue with the accuracy of some of these figures, it never gave the district court any specifics about how these figures were wrong or how its own calculation would differ from Franchise Holding's calculation. HRG simply argued its defenses to the underlying suit, defenses on which it had already defaulted.

Accordingly, we conclude that the district court clerk calculated a sum certain.

### Conclusion

The district court did not abuse its discretion by denying HRG's Rule 55(c) or 60(b) motion. Furthermore, the district

court clerk had authority to enter a default judgment under Rule 55(b)(1). We therefore vacate our stay of enforcement of the default judgment and affirm the district court.

**AFFIRMED.**

---

[5] The First Circuit mentioned liquidated damages, where law or an agreement between the parties fixes the amount owed, as an example of when a court need not hold a hearing to calculate damages. *KPS & Assocs.*, 318 F.3d at 20. The court ultimately concluded that the claim before it failed this standard as well. *Id.* at 21.