2023 UT App 88

## THE UTAH COURT OF APPEALS

RON GRIFFIN,
Appellant and Cross-appellee,

*v.*

SNOW CHRISTENSEN & MARTINEAU,
Appellee and Cross-appellant.

Opinion
No. 20210494-CA
Filed August 17, 2023

Third District Court, Salt Lake Department
The Honorable Kent R. Holmberg
No. 170900275

Ron Griffin, Appellant and Cross-appellee Pro Se

Rodney R. Parker and Adam M. Pace, Attorneys for
Appellee and Cross-appellant

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGE RYAN M. HARRIS concurred. JUDGE AMY J. OLIVER
dissented, with opinion.

TENNEY, Judge:

¶1      Ron Griffin filed a legal malpractice suit against his former
attorneys at Snow Christensen & Martineau (Snow Christensen).
Under rule 4(d)(1)(E) of the Utah Rules of Civil Procedure, Griffin
was required to serve Snow Christensen by delivering a copy of
his complaint to "an officer, a managing or general agent, or other
agent authorized by appointment or law to receive process." To
comply with this rule, Griffin's process server (Process Server)
went to Snow Christensen's offices and gave a copy of the
complaint to the firm's "office administrator."

¶2      Snow Christensen later argued that its administrator didn't
qualify under any of the three categories set forth in rule

4(d)(1)(E). The district court agreed, so it dismissed the case for insufficiency of service of process. Griffin now appeals, arguing that the administrator qualified as a "managing or general agent." For the reasons set forth below, we agree with Griffin and therefore reverse the district court's dismissal order.

## BACKGROUND

*Griffin's Suit and Initial Litigation over Service of Process*

¶3    From 1997 through 2001 or 2002, Griffin (a former Utah attorney) represented Richard and Sandra Cutler in a property dispute. That case was resolved through a settlement in February of 2001. Griffin subsequently sued the Cutlers for nonpayment of legal fees, requesting more than $300,000, plus attorney fees and costs accrued in connection with the case. Griffin represented himself through much of the pretrial litigation, but as the case progressed toward trial, he retained attorneys from Snow Christensen to represent him. After a two-day bench trial, the district court denied all requested relief. Representing himself once again, Griffin appealed that decision. In October 2014, this court affirmed. *See generally Griffin v. Cutler*, 2014 UT App 251, 339 P.3d 100.

¶4    In June 2015, Griffin filed a complaint against Snow Christensen, alleging legal malpractice. After Griffin failed to serve Snow Christensen within the 120-day period required by rule 4(b) of the Utah Rules of Civil Procedure, Griffin filed a motion for additional time, citing health issues as the reason. The court granted that request. After this period of time expired, Griffin requested another extension, again citing his poor health. The court granted this request too. When that period expired, Griffin filed a third request, seeking yet more time in which to serve Snow Christensen. This time, the court denied the request and dismissed the case without prejudice due to Griffin's failure to timely serve the firm.

¶5    Griffin refiled his complaint against Snow Christensen nearly a year later. As in the initial suit, Griffin failed to serve Snow Christensen within 120 days. On Griffin's request, however, the district court granted him an additional 60 days. When that period expired, the court granted his request for another 45 days in which to serve Snow Christensen.

¶6    On August 28, 2017—the final day allowed under Griffin's latest extension—Griffin filed an amended complaint. And as explained in more detail below, Griffin's Process Server also attempted to serve Snow Christensen on that same day by giving a copy of the amended complaint[1] to Dawn Chapman, who was Snow Christensen's "office administrator."

¶7    In September 2017, Snow Christensen filed a motion to quash service and dismiss the amended complaint. Snow Christensen alleged that Griffin "did not properly serve process" on it under rule 4(d)(1)(E), which states that a plaintiff may serve a "corporation . . . , a limited liability company, a partnership, or an unincorporated association . . . by delivering a copy of the summons and complaint to (1) an officer, (2) a managing or general agent, or (3) other agent authorized by appointment or law to receive process." Utah R. Civ. P. 4(d)(1)(E) (numbering added). In Snow Christensen's view, the service of process was defective because Chapman did not qualify under any of the three categories set forth in the rule. And because there had been no effective service, Snow Christensen argued that the case must now be dismissed.

¶8    Griffin opposed the motion, arguing, in part, that Process Server had been told that Chapman was Snow Christensen's "managing agent." The district court subsequently issued an

---

1. Rule 4(b) requires the plaintiff to properly serve the "summons and complaint" on the defendant. Utah R. Civ. P. 4(b). There's no assertion in this case that Griffin served the summons without the amended complaint (or vice versa). For simplicity, we'll simply refer to service of "the complaint" throughout the opinion.

order of dismissal with prejudice, however, ruling that Chapman "was not a general or managing agent and was not authorized to receive service of process."

¶9 Griffin then filed a post-judgment motion requesting various forms of relief under rules 52(b), 59(a)(7), 59(e), and 60(b)(6) of the Utah Rules of Civil Procedure. In the part relevant to this appeal, Griffin argued that the court's conclusion that Chapman did not qualify as a "managing or general agent" was incorrect under *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959). Griffin further argued that because Snow Christensen's motion to dismiss was filed under rule 12(b) of the Utah Rules of Civil Procedure, Griffin should have survived the motion because he had at least made a prima facie case that service had been proper.

¶10 Snow Christensen opposed Griffin's motion, arguing that the motion was untimely and that Griffin's arguments were substantively incorrect. After oral arguments, the court issued a ruling in which it first concluded that Griffin's motion was timely filed. From there, the court concluded that Griffin had made a prima facie showing that Chapman was a managing agent under the *Beard* formulation. Because of this, the court vacated its dismissal and scheduled an "evidentiary hearing regarding service of process and jurisdiction."

¶11 Snow Christensen filed an interlocutory appeal from the district court's decision, challenging its conclusion that Griffin's post-judgment motion was timely filed. In June 2020, the Utah Supreme Court affirmed that decision and remanded the case for further proceedings. *See generally Griffin v. Snow Christensen & Martineau*, 2020 UT 33, 467 P.3d 833.

*Evidentiary Hearing*

¶12 In May 2021, the district court held an evidentiary hearing on the question of whether "Rule 4 service was sufficient as to" Snow Christensen. At the outset of the hearing, the court and the

parties agreed that this question turned on whether Chapman was a managing or general agent of Snow Christensen within the meaning of rule 4(d)(1)(E).

¶13   Appearing pro se, Griffin called himself as his first witness. Griffin testified that on the day in question, he instructed Process Server to try to serve the attorney who was listed as Snow Christensen's registered agent and that he told Process Server to instead "serve the managing agent" "only if it was impossible to serve" the registered agent. Griffin testified that he drove Process Server to Snow Christensen's Salt Lake City office, and that when Process Server returned to Griffin's car, he handed Griffin a document with handwriting on the back that said "Dawn Chapman—administrator" alongside a phone number. Later that day, Griffin filed the return of service with the court.

¶14   Griffin called Process Server as his second witness. Process Server agreed with Griffin's recollection of the initial instructions, and he then described with more particularity what had allegedly occurred inside Snow Christensen's office. According to Process Server, he "went up to the receptionist and asked" if the registered agent was in because he needed to serve him with papers. When the receptionist let Process Server know that the registered agent was in a meeting and couldn't be disturbed, Process Server asked if Snow Christensen had an "office manager" or "managing agent in the firm that [he] could deliver the[] papers to." Process Server claimed that after the receptionist responded in the affirmative, Chapman came to the front desk and told him that she was "the office manager" and could "take the papers." Process Server said that after he gave her the complaint and then obtained her signature, he returned to Griffin's car.

¶15   After Process Server testified, Snow Christensen called Chapman as its witness. Chapman testified that she had received a call from the receptionist telling her that someone was requesting the office manager. She said that when she arrived at the front desk, Process Server was there and asked her if she "was the office manager"; in response, she told him that she "was the

office administrator." From this point forward, Chapman's account differed from that given by Process Server. According to Chapman, when Process Server asked her "to accept service of the papers," Chapman told him that she was "not authorized to sign any papers and [she] was not authorized to accept any service on behalf of the firm." Chapman said that she "made it very clear" to Process Server that she "was not signing anything" and "that [she] was not authorized to accept any service on behalf of the firm." She said that on his insistence, she did write her name and title down on the paper he gave her, but that she "made it clear" to him that by writing her name down, she was not "signing anything" or accepting service.

¶16 In addition to testifying about the events of that day, Chapman also testified about the nature of her position and duties at Snow Christensen. Chapman testified she had been working at the firm for 38 years. She said that her first role had been as "the supervisor of the copy center" and that she had become the "office manager" after "about ten years." She said that she kept the title of "office manager" for another ten years, after which the firm "changed [her] title to administrator," even though her duties remained the same.

¶17 Chapman noted that the only other "nonlawyer staff" who were at her "same level in the firm" were the "controller and the IT manager."[2] Chapman said that she answered directly to the firm's president. Chapman also said that she had a weekly meeting with the firm's president and that "things come up all the time" that would cause her to talk with him "on a daily basis or even more."

¶18 When asked to describe her job duties, Chapman explained that Snow Christensen has "committees for the majority of . . . the firm operations," that she "work[ed] with committee members,

---

2. Due to an "(inaudible)" in the transcript, there's a slight ambiguity in the record of this exchange. Chapman may have also suggested that an "HR" employee was at this level too.

the president," and the "board of directors," and that she performed "functions" for the "day-to-day operations" for the firm. She explained that she didn't have "sole[]" or "general authority over the firm's affairs," but that she worked in "collaboration with the committees and the instructions that [she's] given to implement." In response to a question about whether there were "certain things that [she was] authorized to do on [her] own," Chapman said that she had "authorization to implement the decisions that have been made" "by either the board or committee members." In response to another question, she acknowledged that on Snow Christensen's website, she's listed as the firm's "administrator" and is "identified as part of [its] management." But even so, she said that she was not "free to control the property, operations, business activities, office, place of business, or affairs of" the firm.

### *District Court's Ruling*

¶19    The district court made an oral ruling from the bench, which it later memorialized in a written decision. In that written decision, the court began by noting that service on a corporation is governed by rule 4(d)(1)(E) and that under that rule, the question before it was whether Chapman qualified as an "officer, managing or general agent, or other agent authorized by appointment or law to receive process" for Snow Christensen. The court recognized that this presents a "very fact-specific determination."

¶20    With respect to the relevant facts here, the court first found that Chapman's testimony was "credible and true," thereby accepting Chapman's account of the events at the front desk over those given by Process Server. The court then made several findings about the firm's structure and Chapman's role at the firm. The court found that Snow Christensen's management structure at the time of Griffin's attempted service "included a president, vice president, executive committee, board of directors, and individual committees assigned to work on specific tasks." The court found that Chapman's title was "administrator," a

position that, like the controller and IT director, qualified as "non-lawyer staff." The court found that as the firm's administrator, Chapman attended Snow Christensen's "committee meetings as an ex-officio member," but that she "did not have a vote in the committees' decisions." The court found that Chapman was "not free to control" the firm's "property, operations, business activities, office, or affairs on her own," nor could she make certain decisions "without express direction and approval from a committee or the board of directors."

¶21   Turning to the three categories set forth in rule 4(d)(1)(E), the court concluded that Chapman was neither an "officer" nor an "agent authorized by appointment or law to receive service of process." This left the question of whether Chapman qualified as a "managing or general agent" for the firm. On this, the court noted that a "managing agent" is defined by Black's Law Dictionary as a "person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." (Quoting *Agent*, Black's Law Dictionary (11th ed. 2019).) Accepting that definition, the court determined that Chapman might be considered "an agent" of Snow Christensen because she was "an employee with certain authority." But even so, the court concluded that Chapman did not qualify as "a managing or general agent." In making this determination, the court relied heavily on the fact that Chapman "was required to act under the direction and control" of the firm's "president, executive committee, board of directors, various committees, and others" and that she also did not have either "general control over the affairs" of the firm's "business" or "the ability to make decisions and to exercise judgment and discretion."

¶22   Because of its conclusion that Chapman did not qualify under any of the categories set forth in rule 4(d)(1)(E), the court then ruled that Griffin's "service of process on [her] on August 28, 2017[,] was not valid service." The court accordingly granted the firm's motion to quash service and dismiss amended complaint, thus dismissing Griffin's claims without prejudice.

¶23　Griffin timely appealed.

ISSUE AND STANDARD OF REVIEW

¶24　Griffin challenges the district court's conclusion that Chapman did not qualify as "a managing or general agent" for purposes of rule 4(d)(1)(E). "Whether a person has been served with process is a question of fact, but whether a person is *properly* served is a question of law. Thus, while we review the district court's factual findings as to service for clear error, we review its legal conclusions flowing therefrom for correctness." *Cooper v. Dressel*, 2016 UT App 246, ¶ 2, 391 P.3d 338 (emphasis in original, quotation otherwise simplified).

ANALYSIS

¶25　Griffin raises several issues on appeal, but we need focus on only one of them: whether Chapman qualified as a managing or general agent for purposes of rule 4(d)(1)(E). Contrary to the district court's conclusion, we conclude that she did.

¶26　"[P]roper service is required to exercise jurisdiction over a party," *Labor Comm'n v. Price*, 2020 UT App 24, ¶ 15, 460 P.3d 137, and a "district court lacks personal jurisdiction [over a party] when there has not been effective service of process," *Jordan Credit Union v. Sullivan*, 2022 UT App 120, ¶ 12, 520 P.3d 929 (quotation simplified). "One method of properly serving a party is by personal service." *Cooper v. Dressel*, 2016 UT App 246, ¶ 3, 391 P.3d 338. Rule 4(d)(1) of the Utah Rules of Civil Procedure governs personal service generally, and subsection 4(d)(1)(E) governs personal service "[u]pon a corporation" or other similar entities more particularly. Under that rule, service upon a corporation can be effectuated "by delivering a copy of the summons and complaint to (1) an officer, (2) a managing or general agent, or (3) other agent authorized by appointment or law to receive process." Utah R. Civ. P. 4(d)(1)(E) (numbering added).

¶27 The district court ruled that Chapman did not qualify under any of the rule's three categories. On appeal, Griffin only challenges the court's conclusion that Chapman did not qualify as a "managing or general agent."

¶28 The phrase "managing or general agent" is not defined in the rule. And a review of Utah caselaw reveals only two cases that have really grappled with its meaning: (1) *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and (2) *In re Schwenke*, 2004 UT 17, 89 P.3d 117. We address each in turn.

¶29 In *Beard*, our supreme court considered an appeal from a "trial court's refusal to quash the service of two separate summonses" issued in conjunction with a mining dispute. 336 P.2d at 125. The appeal turned on whether the individual who had been served qualified as a "managing or general agent" under the predecessor to our current rule 4(d)(1)(E). *Id.* at 125–26 & n.1. Considering that question, the supreme court opined that a qualifying person "must be more than a mere employee." *Id.* at 126. Instead, the person "must be in charge of some of its property, operations, business activities, office, place of business or in some manner be responsible for or have control over its affairs." *Id.* Considering the case before it, the supreme court concluded that service had not been proper where the complaint had been delivered to an individual who was not the foreman at the mining camp in question but was instead something more akin to a "mere employee." *Id.*

¶30 The supreme court considered the meaning of this phrase again in *In re Schwenke*. This was an attorney discipline case, and the attorney who had been disciplined delivered a copy of a petition for reinstatement to the state bar to a common-area receptionist at the Law and Justice Center, where the state bar maintained its offices. 2004 UT 17, ¶ 3. On appeal, the supreme court considered whether this was proper service on the state bar under rule 4(d)(1)(E). *See id.* ¶¶ 23–24. The supreme court acknowledged that "cases from other jurisdictions, discussing state and federal corollaries to the Utah rule, have reached

varying conclusions concerning whether service on a receptionist is effective for a corporation or unincorporated association," and it further acknowledged that "generally, proper service is not effected by serving the corporation's receptionist." *Id.* ¶ 24 (quotation simplified).

¶31 But the supreme court went on to explain that "[t]here are . . . exceptions to this general rule," noting that courts "have often found service to be effective" in three situations:

1. "where the employee who received service had a significant amount of authority or apparent authority within the organization";

2. "where the employee played an integrated role within the organization such that he or she would know what to do with papers"; or

3. "where there were other assurances that the documents would reach the intended recipient."

*Id.* ¶ 25. The supreme court then favorably cited a Ninth Circuit decision for the proposition that the service of process "rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice," *id.* (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)), after which the supreme court suggested that when considering whether a person qualified under this rule, courts should "look at various factors to ensure that the service is fair in light of all the surrounding circumstances," *id.* After considering "the circumstances of this case," the court concluded that the receptionist in question did not qualify. *Id.* ¶ 28.[3]

---

3. The dissent reads *In re Schwenke* differently. In the dissent's view, the supreme court drew a distinction between a "general rule that service of process must comply with the letter of rule

(continued…)

¶32   This is the legal backdrop for our assessment of the question before us in this appeal: whether Chapman qualified as a managing or general agent of Snow Christensen under rule

---

4(d)(1)(E)" and an "exception[] to this general rule" under which service is proper if the employee plays a sufficiently large role in the corporation. *Infra* ¶ 42. We disagree with the dissent's reading. An "exception" of the sort that the dissent sees would effectively be an amendment of the rule because it would add an entirely new category to it. But the supreme court has no power to amend a rule of procedure within an individual case. Rather, a rule of procedure can be amended only by the court at the close of a proscribed rulemaking process, *see* Utah Code of Jud. Admin. 11-105(3)(A)–(C), or instead by the legislature with a two-thirds vote, *see* Utah Const. art. VIII, § 4.

We thus disagree with the suggestion that the supreme court was purporting to do this, instead concluding that the supreme court was drawing a different distinction entirely. In the relevant passages, the court noted that "[g]enerally, proper service is not effected by serving the corporation's receptionist," after which it stated that "[t]here are, however, exceptions to this general rule" in situations "where the employee who received service" played a certain kind of role within the corporation. *In re Schwenke*, 2004 UT 17, ¶¶ 24–25, 89 P.3d 117 (quotation simplified). Thus, the court wasn't drawing a distinction between the text or "letter" of rule 4 and an exception to the rule's text. Rather, the court was drawing a distinction between situations in which a receptionist doesn't qualify under the rule's text (which is the "general rule") and situations in which a receptionist does (which is the "exception").

In drawing that distinction, the court set forth and relied on the principles we've discussed above. In this sense, those principles aren't in any way separate from the rule's text, but they are instead the court's direction about how to interpret it. And we also see no basis for concluding that the court thought those principles are somehow limited to cases involving receptionists. Given this, we regard them as being equally applicable for cases like this one involving another kind of employee.

4(d)(1)(E). At the outset, we agree with the district court that this presents a "fact-specific determination." *See, e.g.*, *Direct Mail*, 840 F.2d at 688 ("The determination of whether a given individual is a managing or general agent depends on a factual analysis of that person's authority within the organization." (quotation simplified)); *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3d Cir. 1971) (explaining that "the determination whether an individual is a managing or general agent depends on a factual analysis of that person's authority within the organization" (quotation simplified)); 71 A.L.R.2d 178 § 3[a] (1960) (whether "a particular agent is a managing agent of a corporation, within the meaning of that term in a statute, must depend upon the particular facts involved" (quotation simplified)). Thus, in cases such as this one, we agree that courts should consider the particular facts about the person's role within the corporation at issue.

¶33     Griffin suggested in his brief that he was challenging the sufficiency of the evidence to support some of the court's findings. At oral argument, however, Griffin seemed to backtrack, initially indicating that he might not be making a sufficiency-of-the-evidence argument after all. In any event, he then agreed that "there was evidence to support the findings" that the court made. Having reviewed the record, we agree with his assessment. We accordingly accept the facts as found by the court. And this includes, of note, the court's finding that Chapman's testimony was credible and its various findings about her role in this firm.

¶34     But even accepting those facts as true, we still part ways with the district court's assessment of whether Chapman qualified as a managing or general agent of Snow Christensen. Chapman was far "more than a mere employee" of the firm. *Beard*, 336 P.2d at 126. She had been its "manager" for a decade and was now its "administrator," and there were only two (or maybe three) other non-lawyer employees at the firm who were at her level. Chapman also answered directly to the firm's president, speaking with him at least weekly and often "on a daily basis or even more." Such regular access to and communication with the

firm's president belies the suggestion that she was a "mere employee" as that term was used in *Beard*.

¶35 Even so, Snow Christensen points to *Beard*'s statement that a managing or general agent "must be in charge of some of its property, operations, business activities, office, [or] place of business." 336 P.2d at 126. And on this front, it's true that the district court found that Chapman was "not free to control" the firm's "property, operations, business activities, office, or affairs on her own." But this statement from *Beard* was followed by the disjunctive "or," after which the supreme court opined that persons qualify if they are "in some manner . . . responsible for or have control over" the business's "affairs." *Id.* Here, Chapman was at least "in some manner" "responsible" for the firm's affairs. She "worked under the direction and control" of its "president, executive committee, board, various committees, and others," she attended its "committee meetings as an ex-officio member," and she had "authorization to implement the decisions" that had been made "by either the board or committee members."

¶36 Moreover, if there is any lingering question about whether Chapman qualified as a "managing or general agent," we again note that *In re Schwenke* directed courts to apply this rule "in a manner that will best effectuate" its "purpose of giving the defendant adequate notice," such that service would be considered "fair in light of all the surrounding circumstances." 2004 UT 17, ¶ 25 (quotation simplified). And as one example of a situation where service would be proper, the supreme court pointed to service on an employee who "played an integrated role within" the corporation and would thus be positioned to "know what to do with" the complaint. *Id.* Here, Chapman was the firm's office-wide administrator, she was identified as being part of its "management" on its website, she regularly met with its president, she sat in on its various committee meetings, and she was routinely tasked with implementing decisions made by its president or its committees. In this sense, she seems to have been exactly what the supreme court was contemplating when it spoke of an employee who plays an "integrated" role in a company and

would be positioned to put a complaint into the right hands. Holding otherwise would unnecessarily elevate form over substance, an outcome that would be at odds with the directive given by the supreme court on how to apply this rule.

¶37 As a final attempt to forestall this result, Snow Christensen points to past precedent in which we've held that it's "service of process, not actual knowledge of the commencement of the action, which confers jurisdiction" on a court. *Bel Courtyard Invs., Inc. v. Wolfe,* 2013 UT App 217, ¶ 13, 310 P.3d 747 (quotation simplified). This is of course true. But our decision is not at odds with this principle. In that same precedent, we held that it's the "proper service of process" that "imparts notice that the defendant is being sued and must appear and defend or suffer a default judgment." *Id.* (quotation simplified). So this simply begs the question: what constituted "proper service of process" in this case? Under the rule, proper service of process includes service on a "managing or general agent." Utah R. Civ. P. 4(d)(1)(E). And for the reasons explained above, we conclude that Chapman fit comfortably within the contours of that category that have been given by our supreme court. Thus, to be clear, we are not holding that Snow Christensen was properly served because it had actual knowledge of Griffin's suit. Rather, we're holding that Snow Christensen was properly served because Griffin gave a copy of his complaint to a person who qualified under the rule.[4]

---

4. The dissent suggests that our reading of the rule is "unwieldy" and will cause district courts "to hold evidentiary hearings in most cases" to determine the scope of the employee's authority. *Infra* ¶ 45. But if this is a defect, it's shared by the dissent's proposed interpretation too. After all, the dissent's interpretation turns on whether the employee had "actual and independent authority over the operations of the business," *infra* ¶ 46, a question that would likewise require inquiry into the employee's role within the corporation if this category is placed at issue.

(continued…)

CONCLUSION

For the foregoing reasons, we conclude that Chapman qualified as a managing or general agent of Snow Christensen for purposes of rule 4(d)(1)(E) of the Utah Rules of Civil Procedure and that Griffin's service of process upon Snow Christensen was therefore proper. Because of this, we reverse the district court's decisions to quash service and dismiss the amended complaint.[5]

─────────

In any event, we're less convinced than the dissent that our reading of this rule (or even the dissent's) will in fact produce much more litigation than already occurs. After all, we've relied heavily on the interpretations of this rule that were previously set forth in *Beard* and *In re Schwenke*, and yet neither of those cases apparently prompted such excess litigation. And the likely reason for this is found in the rule itself. As noted, the rule has three categories of persons who can accept service for a corporation, and we're only interpreting one of those categories in this appeal. The other two—"an officer" and an "other agent authorized by appointment or law to receive process"—are more readily defined, so a risk-avoidant plaintiff will ordinarily be incentivized to start there when attempting to serve a corporation.

5. The parties also raised a few additional issues in the briefing that can be quickly resolved.

First, Snow Christensen filed a cross-appeal in which it argued that the district court erred by dismissing the case without prejudice. In his reply brief, Griffin conceded that if dismissal was appropriate, it should have been with prejudice. Because we've reversed the dismissal, we need not address this issue.

Second, Griffin argues that the dismissal of his suit for failure of service violates the Due Process Clause of the U.S. Constitution and Open Courts Clause of the Utah Constitution. Because we've reversed the dismissal on other grounds, we need not address this issue.

(continued…)

OLIVER, Judge (dissenting):

¶38 I disagree with the majority's conclusion that Chapman was "a managing or general agent" of Snow Christensen and that service of the complaint on her was therefore proper under rule 4(d)(1)(E) of the Utah Rules of Civil Procedure. Chapman had no control over the firm's operations or affairs and had no authority to act using her own discretion or judgment; she was limited to implementing the decisions made by the firm's president, board, and committees. I further disagree with the majority's conclusion that the two Utah cases to address this issue evince the pronouncement of our supreme court that such a person is a "managing or general agent" under the rule. Because I would affirm the district court's ruling that service was ineffective here, I respectfully dissent.

¶39 Our supreme court has considered service on a "general or managing agent" in only two cases. In the first case, *Beard v. White, Green & Addison Assocs., Inc.*, 336 P.2d 125 (Utah 1959), the supreme court considered a situation where service had been made upon an individual who the plaintiff claimed was the "foreman in charge" of the defendant's Utah location. *Id.* at 126. In a two-page opinion, the court stated,

> [T]he person served must be more than a mere employee. He must be in charge of some of its property, operations, business activities, office,

---

Third, Griffin argues that because the case was dismissed for lack of jurisdiction, the court did "not have authority to award costs." As Snow Christensen points out in response, however, it did not ultimately "claim" costs, thus allegedly mooting the court's prior order holding that Snow Christensen was "entitled to recover costs." We agree that the issue appears moot; but in any event, because the order of costs was based on the court's conclusion that Snow Christensen was the prevailing party, and because we've reversed the ruling on which that conclusion was based, the award of costs is reversed as well.

place of business or in some manner be responsible for or have control over its affairs.

*Id.*

¶40   But the supreme court did not consider whether the "foreman" had any such duties or responsibilities. *Id.* Rather, the court concluded that the individual served was not the "foreman" of the Utah location. *Id.* And on that basis, it "reversed with directions to quash the service of summons and set aside the judgment." *Id.*

¶41   In the second case, *In re Schwenke*, 2004 UT 17, 89 P.3d 117, our supreme court identified the two competing approaches to determining whether service on a receptionist was effective under rule 4(d)(1)(E).[6] The first approach adheres to the general rule that service of process must comply with the letter of rule 4(d)(1)(E). *Id.* ¶ 24 (citing cases from various jurisdictions finding service on receptionist insufficient). The second approach is an "exception[]" to this general rule," which

---

6. The majority reads *In re Schwenke* as "drawing a distinction between situations in which [service on] a receptionist doesn't qualify under the rule's text" and when it does, rather than "drawing a distinction between the text or 'letter' of rule 4 and an exception to the rule's text." *Supra* note 3. But the supreme court necessarily identified the distinction to be between the general rule of adhering to the text and an "exception[] to this general rule," *In re Schwenke*, 2004 UT 17, ¶ 25, 89 P.3d 117, because a receptionist simply does not qualify under the text of rule 4(d)(1)(E). It is only by loosening adherence to the text through the exception that service on a receptionist could ever be sufficient under rule 4(d)(1)(E). *See id.* (describing the exception set forth by the Ninth Circuit in *Direct Mail Specialist, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) as "look[ing] at various factors to ensure that the service is fair in light of all the surrounding circumstances").

often found service to be effective where the employee who received service had a significant amount of authority or apparent authority within the organization; where the employee played an integrated role within the organization such that he or she would know what to do with papers; or where there were other assurances that the documents would reach the intended recipient.

*Id*. ¶ 25 (citing two cases finding service on receptionist effective).

¶42    The supreme court then summarized the particular facts of *In re Schwenke*, including that the petition was given to a "common-area receptionist," the receptionist was neither supervised nor employed by the Utah State Bar Office of Professional Conduct (OPC), the receptionist notified OPC of hand deliveries but did not deliver them, and the process server received no assurances of delivery to OPC. *Id*. ¶ 26. After discussing the reasons OPC must be apprised of an attorney's intent to seek readmittance, the supreme court concluded, that "[u]nder the circumstances of th[e] case, service of the [p]etition on the common-area receptionist . . . did not constitute effective service of process." *Id*. ¶¶ 27–28.

¶43    Here, the majority concludes the *In re Schwenke* court adopted the exception to the general rule and, accordingly, applies it to analyze whether Chapman was a managing agent. But a close reading of *In re Schwenke* reveals that our supreme court did not, in fact, adopt the exception. The court did not state that it was adopting one approach over the other as the standard for determining whether service was effective on a corporation under rule 4(d)(1)(E),[7] nor did it reference a single reason it would

---

7. I disagree with the majority's view that our supreme court adopted the exception to the general rule because it "favorably cited" the Ninth Circuit's decision in *Direct Mail*. *Supra* ¶ 31. *In re Schwenke* contains no analysis of whether the supreme court

(continued…)

adopt one approach over the other. This is not surprising because service on the receptionist did not suffice under either approach. Thus, it was unnecessary for the court to choose from the two competing approaches. I therefore disagree with the majority's view that "in *In re Schwenke*, our supreme court directed courts to apply this rule 'in a manner that will best effectuate' its 'purpose of giving the defendant adequate notice,' such that service would be considered 'fair in light of all the surrounding circumstances.'" *Supra* ¶ 36 (citation omitted).

¶44   And while the majority states it does not rely on actual notice to conclude that service of process was sufficient here, *supra* ¶ 37, application of the exception to the general rule risks actual notice becoming the test, and an unwieldy one at that. Applying the majority's view, district courts will need to hold evidentiary hearings[8] in most cases in order to make the required factual determinations as to whether the person served "'played an integrated role within' the corporation and would thus be positioned to 'know what to do with' the complaint." *Supra* ¶ 36 (citation omitted).

¶45   In contrast, requiring that the person served is a managing agent with actual and independent authority over the operations

---

agreed with, or intended to adopt, the exception embraced by the Ninth Circuit. Rather, *Direct Mail* was simply cited as one example of a court that has adopted the exception—the other example being the Southern District of New York. *In re Schwenke*, 2004 UT 17, ¶ 25.

8. The majority suggests that these hearings will not happen because "we've relied heavily on the interpretations of this rule that were previously set forth in *Beard* and *In re Schwenke*." *Supra* note 4. I disagree. The reason those two cases have not "prompted such excess litigation" over service of process is that the supreme court did not adopt the exception to the rule in *In re Schwenke*. It is only now, with its reading of *In re Schwenke*, that the majority is opening those floodgates.

of the business—as contemplated by the plain text of rule 4(d)(1)(E)—provides clear direction to litigants and district courts as to whom a plaintiff may properly serve. And, as a result, evidentiary hearings would be required in only the rare case. This court should not unnecessarily increase the burdens on the lower courts when the rule, as written, already provides clear guidance.

¶46 It is also easy to envision a situation where the exception swallows the rule. For example, the assistant to a corporation's president plays "an integrated role within the organization" despite the non-management level of the position. And making sure important papers get delivered to the president is precisely the assistant's job, but it has no relationship to how high up in the organization the assistant sits. Under the majority's view, the legal assistant to the president of Snow Christensen would presumably also qualify as a "managing agent" under rule 4(d)(1)(E), as would, presumably, any attorney employed by the firm. But we do not know for certain, because it would require an evidentiary hearing to make that determination.

¶47 Moreover, although other states' rules on service of process explicitly permit service on the "secretary or assistant" to a corporation's registered agent, officers, and managing or general agent, *see, e.g.*, Ark. R. Civ. P. 4(f)(5); Colo. R. Civ. P. 4(e)(4)(A)–(D), Utah's rule has not been expressly amended in the same way. And it is worth noting that while Arkansas permits service of process on a secretary or assistant, it does not permit service of process on an office manager. *See Clouse v. Ngau Van Tu*, 274 S.W.3d 344, 345 (Ark. Ct. App. 2008) (ruling service upon office manager who was not the registered agent insufficient).

¶48 Applying the text of rule 4(d)(1)(E) to the facts before us, Chapman was not a "general or managing agent" of the firm. A "managing agent" is a "person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." *Managing Agent*, Black's Law Dictionary (11th ed. 2019); *see also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624

(6th Cir. 2004) ("A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control."). The "phrase 'managing or general agent' does not refer to any agent of the corporation, but one who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise." *Cooney v. Barry School of Law*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014).

¶49 Here, Chapman may well be "'more than a mere employee,'" *supra* ¶ 34, and an agent of the firm, but she is not a managing agent. She did not make high-level decisions for the firm, and she did not exercise her own judgment and discretion. In fact, Chapman could not make even small, routine decisions on behalf of the firm without authorization: she could not order office supplies or furniture, she did not have a firm credit card, and she was not authorized to sign any checks. And while she attended the firm's committee meetings, she did not have a vote in any committee decisions. Indeed, she could only "implement the decisions that ha[d] been made" by the president, board, and various committees. Simply put, Chapman did not exercise any control over the firm's operations or affairs, and she could act only under the direction of others.

¶50 In a case where service was made under these same circumstances—on the office manager of a law firm—the United States Court of Appeals for the Third Circuit concluded that service was not proper because the office manager "lacked actual authority." *Ayers v. Jacobs & Crumplar, PA*, 99 F.3d 565, 567–568 (3d Cir. 1996). Other federal courts have similarly concluded that service on an office manager was not proper service on the corporation.[9] *See, e.g., Matero v. Digital Ink Ams. LLC*, No. 6:22-cv-

---

9. The federal rule for service of process on a corporation is nearly identical to the Utah rule. *Compare* Utah R. Civ. P. 4(d)(1)(E) (allowing service "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or other

(continued…)

1606-CEM-LHP, 2023 WL 2527046, at *1 (M.D. Fla. Mar. 15, 2023); *McInerney v. Roosen Varchetti & Olivier, PLLC*, No. 17-10037, 2017 WL 2403577, at *3 (E.D. Mich. June 1, 2017).

¶51    In the absence of a clear pronouncement from our supreme court that Utah courts should apply the exception, this court should apply the general rule. And under rule 4(d)(1)(E), Chapman was not a general or managing agent. Because the majority misreads *In re Schwenke* to adopt the exception to the general rule, it erroneously concludes that applying the rule as written "elevate[s] form over substance" because Chapman "seems to have been exactly what the supreme court was contemplating when it spoke of an employee who plays an 'integrated' role in a company and would be positioned to put a complaint into the right hands." *See supra* ¶ 36.

¶52    I would affirm the district court's conclusion that Griffin failed to properly serve Snow Christensen by serving Chapman.

——————

agent authorized by appointment or law to receive process"), *with* Fed. R. Civ. P. 4(h)(1)(b) (allowing service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process").