2004 UT 89

**JACKSON CONSTRUCTION COMPANY, INC., Plaintiff and Appellee,**

v.

**Robert C. MARRS, Douglas R. Marrs, and John Does I–V, Defendants and Appellants.**

No. 20020745.

Supreme Court of Utah.

Oct. 29, 2004.

1212

Shawn T. Farris, Eric R. Gentry, St. George, for plaintiff.

Russell J. Gallian, St. George, for defendants.

PARRISH, Justice:

¶ 1 Douglas and Robert Marrs ("Douglas and Robert") ask us to reverse the district court's denial of their motion to set aside a default judgment extinguishing their cotenant interest in a piece of real property and awarding exclusive ownership of the property to Jackson Construction Company ("Jackson Construction") based on a claim of adverse possession. Douglas and Robert assert that they were entitled to have the default judgment set aside because Jackson Construction never effectively served them with process, thereby depriving the district court of jurisdiction to enter the default judgment against them. Alternatively, Douglas and Robert contend that the district court was obligated to set aside the default judgment because the complaint upon which it was based failed to state a legally cognizable claim for adverse possession against a cotenant.

¶ 2 We hold that the district court lacked jurisdiction to enter the default judgment because Jackson Construction failed to perfect service of process on Douglas and Rob-ert. Specifically, Jackson Construction failed to exercise reasonable diligence before attempting service by publication under rule 4(d)(4)(A) of the Utah Rules of Civil Procedure. We accordingly reverse the district court and vacate the default judgment.

## BACKGROUND

¶ 3 In 1981, Douglas and Robert inherited undivided one-fourth interests in a piece of real property located in Washington County, Utah. At the time, the remaining undivided one-half interest was owned by Mac and Ione Reber. In 1985, Jackson Construction acquired the Rebers' interest. Douglas asserts that he called Jackson Construction shortly after the transfer, introduced himself, and provided his work telephone number. Jackson Construction admits there may have been a call, but remembers no correspondence or written communication between the two parties. Neither Douglas nor Robert resided in Washington County, and neither made any attempt to improve or occupy the property. In fact, on two occasions, Jackson Construction redeemed the property from tax sales.

¶ 4 In 1998, Jackson Construction filed a complaint that sought a judgment awarding Jackson Construction sole ownership of the property, alleging that it had adversely possessed Douglas and Robert's interests. Jackson Construction simultaneously filed a motion to effectuate service by publication. The motion was accompanied by the affidavit of counsel for Jackson Construction, in which counsel testified that he was unable to determine a viable address for either Robert or Douglas and therefore believed that publication was the only effective means of communicating service. In its memorandum supporting its motion for service by publication, Jackson Construction represented that it had mailed a letter addressed to Douglas and Robert at their last known address in California and that the letter had been returned as "undeliverable."

¶ 5 The district court granted the motion for service by publication, and Jackson Construction thereafter published notice of its action in the *Daily Spectrum*, a Washington County newspaper, once per week for four

weeks. Neither Douglas nor Robert responded to the publication. On January 20, 1999, the district court entered an order of default judgment terminating Douglas and Robert's interests in the property and awarding sole ownership to Jackson Construction.

¶ 6 Douglas and Robert learned of the default judgment in December 2001 and thereafter filed a motion with the district court to have service quashed and the default judgment set aside pursuant to rule 60(b)(4) of the Utah Rules of Civil Procedure.[1] They argued that the court lacked jurisdiction to terminate their interests in the property because Jackson Construction had failed to exercise reasonable diligence in attempting to locate them prior to filing its motion for service by publication, as required by rule 4(d)(4)(A) of the Utah Rules of Civil Procedure. Douglas and Robert also argued that the default judgment was invalid because Jackson Construction's complaint failed to state a viable claim for adverse possession against a cotenant. The district court ruled in favor of Jackson Construction, holding that Jackson Construction had exercised reasonable diligence before seeking service by publication in light of Douglas and Robert's apparent disinterest in the property in preceding years and Jackson Construction's redemption of the property from past tax sales. Douglas and Robert appeal to this court.

¶ 7 We reverse, holding that Jackson Construction failed to exercise reasonable diligence before seeking permission to serve Douglas and Robert by publication. The district court therefore lacked jurisdiction to enter the default judgment and consequently erred in denying Douglas and Robert's motion to set aside that judgment. Our ruling on this issue obviates the need to address Douglas and Robert's alternative claim that Jackson Construction's complaint failed to state a viable claim of adverse possession against a cotenant.

## ANALYSIS

¶ 8 "Personal jurisdiction . . . is the court's ability to exercise its power over a person for the purposes of adjudicating his or her rights and liabilities. A lack of [personal jurisdiction] is fatal to a court's authority to decide a case with respect to a particular litigant." *State v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989) (citations omitted).

> A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion. However, when a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without denying due process to the one against whom it runs. Therefore, the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court.

*Id.* (citations omitted); *see also Garcia v. Garcia,* 712 P.2d 288, 290 n. 4 (Utah 1986) (noting that "the requirements of rule 4 [of the Utah Rules of Civil Procedure] relating to service of process are jurisdictional").

¶ 9 Although jurisdictional questions present issues of law, the burden of demonstrating a lack of jurisdiction lies on the party challenging jurisdiction. "When a judgment, including a default judgment, has been entered by a court of general jurisdiction, the law presumes that jurisdiction exists, and the burden is on the party attacking jurisdiction to prove its absence." *Vijil,* 784 P.2d at 1133.

¶ 10 For a court to acquire jurisdiction, there must be a proper issuance and service of summons. *Murdock v. Blake,* 26 Utah 2d 22, 484 P.2d 164, 167 (1971). This requirement ensures that an individual will not be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Utah Const. art. I, § 7. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to

---

1. Rule 60(b) provides, in relevant part: "On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void." Utah R. Civ. P. 60(b)(4).

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Carlson v. Bos,* 740 P.2d 1269, 1271 (Utah 1987) ("Service of process implements the procedural due process requirement that a defendant be informed of pending legal action and be provided with an opportunity to defend against the action.").

¶ 11 In Utah, rule 4 of the Utah Rules of Civil Procedure governs service of process. With respect to service by publication, rule 4 provides:

> Where the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence, ... the party seeking service of process may file a motion supported by affidavit requesting an order allowing service by publication or by some other means. The supporting affidavit shall set forth the efforts made to identify, locate or serve the party to be served, or the circumstances which make it impracticable to serve all of the individual parties.

Utah R. Civ. P. 4(d)(4)(A). Under this rule, litigants may not resort to service by publication until they have first undertaken reasonably diligent efforts to locate the party to be served. This reasonable diligence requirement arises from constitutional due process rights and the recognition that publication alone is generally not a reliable means of informing interested parties that their rights are at issue before the court. *Mullane,* 339 U.S. at 315, 70 S.Ct. 652 ("Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.").

¶ 12 Douglas and Robert mount a two-part attack on the district court's jurisdiction to enter the default judgment. First, they argue that the district court's assessment of reasonable diligence was permeated by considerations of impermissible factors. Specifically, Douglas and Robert argue that the

indifference they displayed toward the property prior to Jackson Construction's initiation of the lawsuit should have played no part in the court's assessment of Jackson Construction's reasonable diligence. Second, Douglas and Robert argue that once their prelitigation indifference toward the property is excised from the equation, Jackson Construction's efforts to locate them prior to requesting service by publication do not constitute reasonable diligence.

¶ 13 We first examine whether the district court relied on impermissible factors in concluding that Jackson Construction exercised reasonable diligence before seeking to serve Douglas and Robert by publication. Douglas and Robert argue that the district court should not have considered evidence of their indifference toward the property in the years preceding the litigation, such as whether they contacted Jackson Construction regarding its cotenant interest or whether they allowed Jackson Construction to redeem the property from tax sales. According to Douglas and Robert, those facts had no bearing on whether Jackson Construction exercised reasonable diligence in attempting to locate them.

¶ 14 In contrast, Jackson Construction contends that the level of diligence required in a real property case varies, depending on the degree of past attentiveness to the property demonstrated by the person to be served. Jackson Construction argues that the standard of reasonable diligence it had to meet in this case was relatively low because the court could properly infer from their past conduct that Douglas and Robert were indifferent toward the property. In so arguing, Jackson Construction relies on *Mullane,* in which the United States Supreme Court stated that notice must be "reasonably calculated, *under all the circumstances,* to apprise interested parties of the pendency of the action." 339 U.S. at 314, 70 S.Ct. 652 (emphasis added). It also relies on Justice Wolfe's concurrence in *Parker v. Ross,* which states that "[d]ue diligence must be *tailored to fit the circumstances* of each case." 117 Utah 417, 217 P.2d 373, 379 (Utah 1950) (Wolfe, J., concurring) (emphasis added). On the basis of those statements, Jackson Construction as-

serts that the district court was required to consider the "totality of the circumstances," including Douglas and Robert's past inattentiveness to the property, in evaluating the degree of diligence required before allowing service by publication.

■ ¶ 15 We disagree. Nothing in rule 4 or our prior cases supports the proposition that an owner's apparent inattentiveness to a piece of real property relieves a plaintiff suing to acquire title to that property of exercising reasonable diligence before seeking permission to effectuate service by publication. In *Carlson*, we explained that "the words 'under all the circumstances' embody the idea that a plaintiff must act diligently and take such steps in attempting to give the defendant actual notice of the proceeding as are reasonably practicable." 740 P.2d at 1275. A determination of reasonable diligence thus properly focuses on the *plaintiff's* efforts to locate the defendant. Relevant factors may include the number of potential defendants involved, the projected expense of searching for them, and the number and type of sources of available information regarding their possible whereabouts, *see id.* at 1276, but do not include assumptions regarding a defendant's interest in the rights to be adjudicated.

¶ 16 The United States Supreme Court reached a similar conclusion in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In that case, the Court was asked to decide "whether notice by publication . . . provides a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes." *Id.* at 792, 103 S.Ct. 2706. In holding notice by publication inadequate, the Court noted that although some creditors have the means to track the payment of taxes and "keep abreast of such notices," a party's "ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Id.* at 799, 103 S.Ct. 2706. The Court also reiterated its prior rejection of the notion that "due process rights may vary depending on whether actions are *in rem* or *in personam*" in nature, *id.* at 796 n. 3, 103 S.Ct. 2706; *see also Mullane*, 339 U.S. at 312, 70 S.Ct. 652, thereby declining to create an alternative measure of due process for actions involving real property, such as the one Jackson Construction proposes.[2]

■ ¶ 17 We therefore hold that the district court erred in considering Douglas and Robert's past actions regarding the property when evaluating whether Jackson Construction exercised reasonable diligence as required by rule 4(d)(4)(A). While we do not attempt to justify Douglas and Robert's inattentiveness and tax payment delinquency, their behavior does not alter the degree of diligence Jackson Construction was constitutionally obligated to exercise in attempting to provide them with actual notice of the lawsuit.

**2.** In *Mennonite Board of Missions*, the Supreme Court recounted the original basis for, and eventual elimination of, the distinction between in rem and in personam due process requirements:

At one time constructive service was considered the only means of notifying nonresidents since it was believed that [process] "from the tribunals of one State cannot run into another State." As a result, the nonresident acquired the duty "to take measures that in some way he shall be represented when his property is called into requisition." If he "[failed] to get notice by the ordinary publications which have been usually required in such cases, it [was] his misfortune."

Rarely was a corresponding duty imposed on interested parties who resided within the State and whose identities were reasonably ascertainable. Even in actions *in rem*, such individuals were generally provided personal service. Where the identity of interested residents could

not be ascertained after a reasonably diligent inquiry, however, their interests in property could be affected by a proceeding *in rem* as long as constructive notice was provided.

Beginning with *Mullane*, this Court has recognized, contrary to the earlier line of cases, that "an adverse judgment *in rem* directly affects the property owner by divesting him of his rights in the property before the court." In rejecting the traditional justification for distinguishing between residents and nonresidents and between *in rem* and *in personam* actions, the Court has not left all interested claimants to the vagaries of indirect notice. Our cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in *in personam* actions.

*Mennonite Bd. of Missions*, 462 U.S. at 796, 103 S.Ct. 2706 (alterations in original) (citations omitted).

¶ 18 Having concluded that the prelitigation conduct of the parties is not to be factored into an assessment of reasonable diligence, we next evaluate whether Jackson Construction's attempts to locate Douglas and Robert met the reasonable diligence standard required for service by publication. We conclude that they did not.

■ ¶ 19 The reasonable diligence standard does not require a plaintiff to "exhaust all possibilities" to locate and serve a defendant. *Downey State Bank v. Major–Blakeney Corp.*, 545 P.2d 507, 509 (Utah 1976), *overruled in part on other grounds by Mgmt. Servs. v. Dev. Assocs.*, 617 P.2d 406 (Utah 1980). It does, however, require more than perfunctory performance. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 70 S.Ct. 652. In his concurrence to this court's decision in *Parker*, Justice Wolfe articulated the reasonable diligence standard as follows:

> The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address or the fact of death of the person on whom service is sought.... [Reasonable diligence] is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so. If the end sought is the address of an out-of-state defendant it encompasses those steps most likely, under the circumstances, to accomplish that result.

217 P.2d at 379 (Wolfe, J., concurring).

■ ¶ 20 To meet the reasonable diligence requirement, a plaintiff must take advantage of readily available sources of relevant information. A plaintiff who focuses on only one or two sources, while turning a blind eye to the existence of other available sources, falls short of this standard. In a case such as this, involving out-of-state defendants, a plaintiff might attempt to locate the defendants by checking telephone directories and public records, contacting former neighbors, or engaging in other actions suggested by the particular circumstances of the case. Advances in technology, such as the Internet, have made even nationwide searches for known individuals relatively quick and inexpensive.

■ ¶ 21 In this case, Jackson Construction failed to demonstrate that it made reasonably diligent attempts to locate and notify Douglas and Robert of its suit. Jackson Construction's motion for service by publication and the supporting affidavit filed therewith mention only two steps undertaken to locate Douglas and Robert. Jackson Construction first obtained from the Washington County recorder a single California address for both Douglas and Robert. It then mailed to that California address a letter that was returned marked "undeliverable." Such minimal efforts do not constitute reasonable diligence.[3] Ordinary prudence suggests that Jackson Construction could have rounded out its search for Douglas and Robert by at least consulting a telephone directory or by contacting Mac Reber, a resident of Washington County who was Douglas and Robert's cotenant before Jackson Construction acquired its interest in the property. Such efforts would not have been onerous. The district court should have recognized that Jackson Construction's minimal efforts to locate Douglas and Robert were insufficient to support service by publication.

¶ 22 We additionally note that the means of publication employed by Jackson Construction appear questionable. Once alternative service is authorized, it must be "reason-

---

3. The memorandum in support of Jackson Construction's motion for service by publication concluded that "Plaintiff has made all reasonable attempts to locate the defendants." We have previously ruled, however, that "an affidavit is not sufficient if it states mere conclusions as to diligent search and inquiry. It must set forth facts upon which the court can base a judgment as to whether such diligence has been exercised to meet that requirement." *Downey State Bank*, 545 P.2d at 509. Therefore, Jackson Construction's conclusory allegation of diligence is insufficient to meet rule 4's diligence requirement.

ably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable." Utah R. Civ. P. 4(d)(4)(B). In this case, Jackson Construction urged the court to require publication only in a Washington County newspaper, even though Douglas and Robert's last known address was in California. The sole justification proffered by Jackson Construction for requesting that publication be limited to Washington County was cost. Nothing in the record suggests that either the scope or the location of the publication was selected with the objective of actually notifying Douglas and Robert of the pendency of the lawsuit. When considered in the context of the minimal efforts made to locate Douglas and Robert, the limited scope of the publication actually belies a legitimate effort to effectuate notice of the lawsuit. Service of process in this case was functionally equivalent to rolling up the summons, shoving it into a bottle, and throwing it into the ocean.

¶ 23 Because Jackson Construction failed to exercise reasonable diligence in attempting to locate Douglas and Robert, service by publication failed to satisfy due process requirements, and the district court lacked jurisdiction to enter the default judgment. Accordingly, the default judgment is void and must be vacated. *See Garcia,* 712 P.2d at 290; *Skanchy v. Calcados Ortope SA,* 952 P.2d 1071, 1074 (Utah 1998).

## CONCLUSION

¶ 24 The reasonable diligence requirement that must be fulfilled under rule 4 prior to conducting service by publication in a real property case may not be excused on the basis of a defendant's past indifference toward the property. Rather, the requirement must be met independent of any assumptions as to a defendant's concern over his property rights. In order to meet the reasonable diligence requirement imposed by rule 4, a plaintiff must take advantage of reasonably available channels of relevant information as suggested by ordinary prudence and the particular circumstances of the case. In this case, Jackson Construction's de minimis efforts to locate Douglas and Robert did not

constitute reasonable diligence and were thus insufficient to support service by publication. We accordingly reverse the district court's denial of Douglas and Robert's motion to set aside the default judgment and remand the case to the district court for proceedings consistent with this opinion.

¶ 25 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.