*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 16**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

RON GRIFFIN,
*Respondent,*

*v.*

SNOW CHRISTENSEN & MARTINEAU,
*Petitioner.*

No. 20230812
Heard November 1, 2024
Filed June 5, 2025

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Kent Holmberg
No. 170900275

Attorneys:

Ron Griffin, Huntington Beach, Cal., pro se respondent

Rodney R. Parker, Salt Lake City, for petitioner

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

### INTRODUCTION

¶1    Ron Griffin sued the law firm of Snow Christensen & Martineau (SCM or firm) for legal malpractice. On the last day for timely service of the complaint, Griffin's process server tried to serve SCM. After unsuccessfully trying to serve SCM's registered agent, the process server left a copy of the papers with Dawn Chapman, SCM's administrator.

¶2    SCM moved to dismiss Griffin's complaint on the basis that he failed to properly serve the firm under rule 4(d)(1)(E) of the Utah Rules of Civil Procedure, which ordinarily requires a plaintiff to serve a corporation by delivering a copy of the complaint to "an officer, a managing or general agent, or other agent authorized by appointment or law to receive process." The firm argued that Chapman was not one of the agents identified in the rule, and the district court agreed. In particular, the court determined that Chapman was not a managing or general agent of SCM because she did not exercise general power involving judgment and discretion in her administrative role.

¶3    Griffin sought review of the district court's decision in the court of appeals. A divided court reversed. Relying on *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and *In re Schwenke*, 2004 UT 17, 89 P.3d 117, the court held that Chapman was a managing or general agent of SCM because she was more than a "mere employee" and was "at least in some manner responsible for the firm's affairs." *Griffin v. Snow Christensen & Martineau*, 2023 UT App 88, ¶¶ 34–36, 536 P.3d 91 (cleaned up). The court of appeals further opined that it was "fair" under the circumstances to conclude that service on SCM was proper because Chapman "played an integrated role within" SCM and was "positioned to know what to do with the complaint." *Id.* ¶ 36 (cleaned up).

¶4    SCM petitioned this court for certiorari review. We granted its request and now decide whether Chapman was a managing or general agent under rule 4(d)(1)(E). We conclude that she was not. To qualify as a managing or general agent for purposes of that rule, one must be a person exercising general power in the corporation involving the exercise of judgment and discretion. Because Chapman did not exercise such judgment and discretion in her role as an SCM administrator, SCM was not effectively served. We thus reverse the court of appeals' decision and remand the case to the court of appeals for further proceedings.

## BACKGROUND[1]

*Griffin's Lawsuit and Service of Process*

¶5    Nearly a decade ago, Griffin filed a complaint against SCM alleging legal malpractice. Under rule 4(b) of the Utah Rules of Civil Procedure, Griffin was required to serve SCM with the complaint within 120 days of its filing. Griffin received two extensions of time to serve SCM but was denied a third. With that denial, the district court dismissed Griffin's case without prejudice for failure to timely serve.

¶6    About a year later, Griffin refiled his complaint. After seeking and receiving another two extensions to effectuate service, Griffin filed an amended complaint and hired a process server to serve SCM on the final day allowed. The process server first tried to serve SCM's registered agent. But when the process server was unable to locate the registered agent, the receptionist called Chapman, an SCM administrator, to the front desk.

¶7    When Chapman arrived, the process server asked Chapman if she was the office manager, and she replied that she was the office administrator. The process server then asked Chapman to sign a paper to accept service of process, and she "made it very clear to [him] that she was not authorized to sign the papers" and "could not accept service on behalf of SCM." The process server advised Chapman "that the rules had changed" and that he did not "need her to sign anything"; instead, he "just needed to give the papers to an office manager." At the process server's request, Chapman wrote her name and phone number on the back of one of the papers next to the word "administrator." As she did so, Chapman again stated that she was not authorized to accept service of the documents for SCM. The process server then placed the complaint and other papers on the reception desk and left.

*Chapman's Role as SCM Administrator*

¶8    When Chapman interacted with Griffin's process server, her job title at SCM was "administrator." In that role, Chapman worked under the direction and control of SCM's president, executive committee, board of directors, and other firm committees. She reported to the firm's president and met with him

---

[1] Our recitation of the facts is based on the district court's unchallenged factual findings.

weekly to discuss firm affairs. She also attended committee meetings as a non-voting member.

¶9   As an administrator, Chapman "was not free to control SCM's property, operations, business activities, office, or affairs on her own." Rather, she was charged with implementing decisions that had already been made by the firm's committees or other executives. For example, while she could make recommendations to the committee charged with making hiring and firing decisions for non-lawyer staff, she was not authorized to make those decisions independently. And Chapman could not sign checks for SCM, she could not sign contracts on SCM's behalf without explicit direction and authorization to do so, and she did not have a firm credit card. Finally, Chapman was not experienced with legal processes, and her "job responsibilities did not include law procedures, filing of documents with the court, or other court issues."

*SCM's Motion to Quash Service and Dismiss Griffin's Complaint*

¶10   After Griffin filed a return of service with the court, SCM filed a motion to quash service and to dismiss Griffin's amended complaint for failing to properly serve it. SCM asserted that Griffin's service failed to comply with rule 4(d)(1)(E) of the Utah Rules of Civil Procedure, which ordinarily requires a plaintiff to serve process on a corporation "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or other agent authorized by appointment or law to receive process."[2] Specifically, SCM argued that Griffin's service was improper because Chapman did not fill any of these roles.

¶11   Griffin opposed the motion, arguing that Chapman was a "managing agent" of SCM authorized to accept service under rule 4(d)(1)(E). Griffin defined a "managing agent" as "an agent or employee of a corporation or other business entity who has a position that involves the use of judgment and discretion and who

---

[2] We say "ordinarily" because the rule also provides that if none of the identified officers or agents "can be found within the state, and the defendant has, or advertises or holds itself out as having, a place of business within the state or elsewhere, or does business within this state or elsewhere," then service may be had "upon the person in charge of the place of business." UTAH R. CIV. P. 4(d)(1)(E). Griffin has not argued that this part of the rule applies.

is considered under the law as capable of accepting service of process and answering questions under cross-examination on behalf of the business entity." (Quoting *Agent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/agent#legalDictionary (last visited May 30, 2025).) And applying that definition, Griffin claimed that service on Chapman was proper because she was capable of accepting service of process and answering questions under cross-examination on SCM's behalf.

¶12  The district court disagreed. It determined that Chapman was not a managing agent of SCM, nor was she authorized to receive service of process on SCM's behalf. Accordingly, the court granted SCM's motion and dismissed the case.

¶13  Griffin sought postjudgment relief from the district court. He argued, among other things, that because the court resolved SCM's motion on documentary evidence only, it was required to resolve all factual conflicts in his favor. The court agreed, and it vacated its prior decision and set the matter for an evidentiary hearing.

*The Evidentiary Hearing and the District Court's Decision*

¶14  Following a detour to this court,[3] the district court held its evidentiary hearing. The court and both parties agreed that the question of whether Griffin's service was proper turned on whether "Chapman qualifies as a managing agent or other individual under Rule 4."

¶15  After hearing testimony from Griffin, Chapman, and the process server, and arguments from the parties, the district court granted SCM's motion to quash service and to dismiss Griffin's amended complaint. In its decision, the court first observed that it was undisputed that Chapman was neither an officer nor an agent authorized by appointment or law to receive service of process under rule 4(d)(1)(E). Thus, the only question for the court to resolve was whether Chapman was SCM's "managing or general agent" within the meaning of the rule.

---

[3] We heard SCM's interlocutory challenge to the district court's authority to entertain Griffin's postjudgment motion. *See Griffin v. Snow Christensen & Martineau*, 2020 UT 33, 467 P.3d 833. Specifically, SCM argued that the motion was untimely and could not be considered. *Id.* ¶¶ 4–5, 8. We disagreed and affirmed the district court's conclusion that the motion was timely filed. *Id.* ¶ 33.

¶16 Quoting Black's Law Dictionary, the court interpreted "managing or general agent" to mean "[a] person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." (Alteration in original.) The court then concluded that although Chapman was an *agent* of SCM, she was not a *managing or general* agent. The court reasoned that Chapman "was required to act under the direction and control of SCM's president, executive committee, board of directors, various committees, and others" and that she "did not have general control over the affairs of SCM's business and the ability to make decisions and to exercise judgment and discretion."

¶17  Having rejected Griffin's claim that Chapman was SCM's "managing or general agent," the district court dismissed Griffin's amended complaint. It concluded that because Griffin's service of process on Chapman "was not valid service as to SCM" under rule 4(d)(1)(E), it lacked personal jurisdiction over the firm.

*Griffin's Appeal and the Court of Appeals' Decision*

¶18  Griffin appealed, arguing that the district court erred in concluding that Chapman was not "a managing or general agent" of SCM for purposes of rule 4(d)(1)(E).[4] *Griffin v. Snow Christensen & Martineau*, 2023 UT App 88, ¶ 24, 536 P.3d 91. In a split decision, the court of appeals reversed the district court, holding that Chapman qualified as a managing or general agent of SCM for purposes of rule 4(d)(1)(E) of the Utah Rules of Civil Procedure and that SCM "was properly served because Griffin gave a copy of his complaint to a person who qualified under the rule." *Id.* ¶ 37. To

---

[4] The parties raised a few additional issues before the court of appeals. Specifically, Griffin asserted that the dismissal of his suit violated the Due Process Clause of the United States Constitution and the Open Courts Clause of the Utah Constitution, and that the district court was not authorized to award costs to SCM. *Griffin*, 2023 UT App 88, ¶ 37 n.5. In a cross-appeal, SCM challenged the district court's decision to dismiss Griffin's claims without prejudice. *Id.* The court of appeals reversed any award of costs, which would have been based on a prevailing party determination, but it did not address the remaining issues. *Id.* It deemed their resolution unnecessary given its reversal of the district court's order on other grounds. *Id.* None of these outstanding issues are before us on certiorari review.

reach that conclusion, the court of appeals did not apply the definition used by the district court. Instead, the court of appeals drew on language from two of our cases: *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and *In re Schwenke*, 2004 UT 17, 89 P.3d 117. *See Griffin*, 2023 UT App 88, ¶¶ 28–31.

¶19 From *Beard*, the court of appeals concluded that a corporation's managing or general agent "must be more than a mere employee" and "must be in charge of some of its property, operations, business activities, office, place of business or in some manner be responsible for or have control over its affairs." *Id.* ¶ 29 (quoting *Beard*, 336 P.2d at 126). And from *Schwenke*, the court concluded that this court has deemed service to be valid under rule 4(d)(1)(E) if (1) "the employee who received service had a significant amount of authority or apparent authority within the organization"; (2) "the employee played an integrated role within the organization such that he or she would know what to do with papers"; or (3) "there were other assurances that the documents would reach the intended recipient." *Id.* ¶¶ 30–31 (quoting *Schwenke*, 2004 UT 17, ¶ 25). The court also inferred from *Schwenke* a directive requiring courts to apply rule 4(d)(1)(E) "'in a manner that will best effectuate' its 'purpose of giving the defendant adequate notice,' such that service would be considered 'fair in light of all the surrounding circumstances.'" *Id.* ¶ 36 (quoting *Schwenke*, 2004 UT 17, ¶ 25).

¶20 Applying these standards, the court of appeals concluded that "Chapman qualified as a managing or general agent [of SCM] for purposes of rule 4(d)(1)(E)." *Id.* ¶ 37. It first reasoned that Chapman "was far more than a mere employee of the firm" as that phrase was used in *Beard*, pointing to Chapman's title as "administrator" and the fact that she reported to the firm's president and spoke to him regularly. *Id.* ¶ 34 (cleaned up). The court further concluded that Chapman was "at least in some manner responsible for the firm's affairs" because she "worked under the direction and control of its president, executive committee, board, various committees, and others, she attended its committee meetings as an ex-officio member, and she had authorization to implement the decisions that had been made by either the board or committee members." *Id.* ¶ 35 (cleaned up). The court also concluded that service on Chapman "would be considered fair in light of all the surrounding circumstances" because she "played an integrated role within the corporation and

7

would thus be positioned to know what to do with the complaint." *Id.* ¶ 36 (cleaned up).

¶21 Judge Oliver dissented, taking issue with both the majority's interpretation of the term "managing or general agent" and its conclusion that Chapman qualifies as one. *Id.* ¶ 51 (Oliver, J., dissenting). Judge Oliver began by critiquing the majority's interpretation of *Beard* and *Schwenke*. She observed that *Beard* was not particularly helpful, because this court did not analyze whether the employee in question was a managing or general agent. *Id.* ¶¶ 39–40. She also opined that this court in *Schwenke* did not "direct[] courts to apply [rule 4] in a manner that will best effectuate its purpose of giving the defendant adequate notice, such that service would be considered fair in light of all the surrounding circumstances," *id.* ¶ 43 (cleaned up), nor did it adopt the rule that service is proper on employees who "played an integrated role within the corporation and would thus be positioned to know what to do with the complaint," *id.* ¶¶ 41–44 (cleaned up).

¶22 Judge Oliver then applied the definition of "managing agent" articulated by the district court, reasoning that it is the standard "contemplated by the plain text of rule 4(d)(1)(E)." *Id.* ¶¶ 45, 48. She concluded that Chapman was not a managing or general agent of SCM because "[s]he did not make high-level decisions for the firm, and she did not exercise her own judgment and discretion." *Id.* ¶ 49.

¶23 We granted SCM's petition for certiorari review.

## ISSUE AND STANDARD OF REVIEW

¶24 The issue presented in this case is whether the court of appeals erred in reversing the district court's dismissal of Griffin's amended complaint against SCM for improper service. Specifically, SCM challenges the court of appeals' conclusion that Chapman, who received the summons and amended complaint, was a "managing or general agent" of SCM for purposes of rule 4(d)(1)(E) of the Utah Rules of Civil Procedure.

¶25 Whether service is proper presents a question of law, as does the proper interpretation of our procedural rules and caselaw. *Reed v. Reed*, 806 P.2d 1182, 1184 n.3 (Utah 1991) (service of process); *Arbogast Fam. Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035 (rules of procedure); *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 13, 423 P.3d 1150 (caselaw). We review these questions for

correctness, affording the court of appeals no deference. *See Bennion v. Stolrow*, 2024 UT 14, ¶ 15, 550 P.3d 474.

## ANALYSIS

¶26 Personal jurisdiction refers to a court's authority to exercise its power over a particular litigant. *See Jackson Constr. Co., v. Marrs*, 2004 UT 89, ¶ 8, 100 P.3d 1211. Without personal jurisdiction, a court cannot adjudicate the litigant's rights or liabilities. *See id.* For a court to acquire personal jurisdiction over a litigant, "there must be a proper issuance and service of summons." *Weber Cnty. v. Ogden Trece*, 2013 UT 62, ¶ 44, 321 P.3d 1067 (cleaned up). "If the summons and complaint are not timely served, the action against the unserved defendant may be dismissed . . . ." UTAH R. CIV. P. 4(b).

¶27 "[R]ule 4 of the Utah Rules of Civil Procedure governs service of process." *Jackson Constr.*, 2004 UT 89, ¶ 11. Rule 4(d)(1) identifies personal service as one acceptable method, and subparagraph 4(d)(1)(E) specifically governs personal service upon corporations. Under that rule, service upon a corporation can be effectuated "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or other agent authorized by appointment or law to receive process." UTAH R. CIV. P. 4(d)(1)(E). The sole issue in this case is whether the court of appeals erred in concluding that Chapman was a "managing or general agent" of SCM for purposes of this rule.

¶28 To resolve this issue, we begin by interpreting the term "managing or general agent" as used in rule 4(d)(1)(E). We then address Griffin's and the court of appeals' reliance on our decisions in *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and *In re Schwenke*, 2004 UT 17, 89 P.3d 117, and the extent to which those cases give meaning to that term. Last, we analyze the facts of this case under the rule's plain terms and conclude that Chapman was not SCM's managing or general agent, and thus Griffin's service of the amended complaint on Chapman was ineffective to invoke the district court's jurisdiction over SCM.

I. THE COURT OF APPEALS ERRED IN REJECTING THE DISTRICT COURT'S INTERPRETATION OF THE TERM "MANAGING OR GENERAL AGENT"

¶29 "When we interpret a procedural rule, we do so according to our general rules of statutory construction." *Arbogast Fam. Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035. Those

guidelines instruct that we interpret rules in accordance with their plain meaning, with the objective of giving effect to the intent of the promulgating body. *See id.*; *In re Discipline of Brussow*, 2012 UT 53, ¶ 14, 286 P.3d 1246. In the case of the rules of civil procedure, that body, most often, is this court. *See* UTAH CONST. art. VIII, § 4 ("The Supreme Court shall adopt rules of procedure . . . to be used in the courts of the state . . . . The Legislature may amend the Rules of Procedure . . . adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature.").

¶30   Here, we are called upon to interpret the term "managing or general agent" as used in rule 4(d)(1)(E) of the Utah Rules of Civil Procedure.[5] In the absence of a definition built into the rule itself, dictionaries can "provide a useful starting point for the assessment of ordinary meaning." *See Gamez v. Utah Lab. Comm'n*, 2022 UT 20, ¶ 47, 511 P.3d 1145. In this case, the district court turned to Black's Law Dictionary for such guidance. It found "managing agent" defined there as "[a] person with general power involving

---

[5] Neither the parties, the court of appeals, nor the district court drew a distinction between a managing or a general agent for purposes of rule 4(d)(1)(E). All have referred to a "managing or general agent" as a singular term. We do the same. While a "managing agent" could differ, for some purposes, from a "general agent," we conclude that, when read in context, the term "managing or general agent" in rule 4 does not refer to two distinct types of agents. *Cf. Thompson v. State*, 2024 UT 27, ¶ 31, 554 P.3d 988 (explaining that we "determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)" (cleaned up)). Rather, the rule seems to capture a single class of agents who exercise general authority and discretion on behalf of a corporation, though their titles and roles within the corporation may vary. *See Agent*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining a "managing agent" as "[a] person with general power involving the exercise of judgment and discretion," and a "general agent" as "[a]n agent authorized to transact all the principal's business of a particular kind or in a particular place"); *see also State ex rel. Ford Motor Co. v. Manners*, 161 S.W.3d 373, 376 (Mo. 2005) (en banc) (defining a "managing agent" as "one invested with some general powers which involve the exercise of independent judgment and discretion," and defining a "general agent" as, among other things, one "clothed with general authority to act for the corporation" (cleaned up)).

the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." *Agent*, BLACK'S LAW DICTIONARY (11th ed. 2019). That definition mirrors the definition of "managing agent" Griffin suggested to the district court from Merriam-Webster, which provides in relevant part: "an agent or employee of a corporation or other business entity who has a position that involves the use of judgment and discretion." *See supra* ¶ 11. It also encompasses Merriam-Webster's definition of "general agent" as "one employed to transact generally all legal business entrusted by a principal." *See General Agent*, MERRIAM-WEBSTER, https://www.merriam-webster.com /dictionary/general%20agent (last visited May 30, 2025).

¶31 Not only is the meaning the district court attributed to "managing or general agent" found in dictionaries, but courts throughout the country have embraced it or similar definitions in giving plain meaning to the term for purposes of interpreting like rules or statutes governing the service of process. *See, e.g.*, *State ex rel. Ford Motor Co. v. Manners*, 161 S.W.3d 373, 376 (Mo. 2005) (en banc) (interpreting "managing or general agent" and stating "managing agent" has "generally been defined as one invested with some general powers which involve the exercise of independent judgment and discretion" (cleaned up)); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004) ("A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control."); *Grammenos v. Lemos*, 457 F.2d 1067, 1073 (2d Cir. 1972) (explaining a "general or managing agent must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it"); *Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 759 (M.D. Tenn. 2021) (same); *d'Amico Dry d.a.c. v. McInnis Cement Inc.*, 469 F. Supp. 3d 185, 190 (S.D.N.Y. 2020) (same); *Rogers v. Washington Fairmont Hotel*, 404 F. Supp. 2d 56, 58 (D.D.C. 2005) ("In order to be considered a 'managing or general agent,' a person must have broad authority encompassing general management powers, distinguished from an employee who acts in an inferior capacity and acts under the direction and control of the principal." (cleaned up)).

¶32 The district court's interpretation is also supported by applying the interpretive canon *noscitur a sociis*, which instructs that "words grouped in a list should be given related meanings."

*See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (2012) (cleaned up); *see also Richards v. Cox*, 2019 UT 57, ¶ 34, 450 P.3d 1074 ("Under the interpretive canon *noscitur a sociis*, we read associated words as bearing similar contextual meanings to each other."). The term "officer," which is also used in rule 4(d)(1)(E), describes an individual with authority to exercise some judgment or discretion as to corporate matters. A. Gilchrist Sparks III & Lawrence A. Hamermesh, *Common Law Duties of Non-Director Corporate Officers*, 48 BUS. LAW. 215, 216 (1992) ("The term 'officer' is properly applicable only to those in whom administrative and executive functions have been entrusted, and does not apply to those without judgment or discretion as to corporate matters."); 2 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 269, Westlaw (database updated Sept. 2024) ("Officers are usually charged with important managerial functions such as administering and operating the company, recruiting key personnel, and signing checks."). Giving "managing or general agent" the meaning attributed to it by the district court is supported by this canon, as both terms refer to individuals who may have different corporate duties but who are similarly vested with the authority to exercise independent judgment and discretion in the exercise of those duties.[6]

---

[6] Other jurisdictions with rules similar to Utah's rule 4(d)(1)(E) have made like observations. *See, e.g.*, *Hatinen v. Payne*, 185 N.W. 386, 387 (Minn. 1921) ("In view of the connection in which the term 'managing agent' is used, we think the Legislature intended thereby only those agents who possess powers similar in character and importance to those possessed by the officers expressly named; that they intended only those agents who have charge and control of the business activities of the corporation or of some branch or department thereof, and who, in respect to the matters entrusted to them, are vested with powers requiring the exercise of an independent judgment and discretion."); *Atlas Glass Co. v. Ball Bros. Glass Mfg. Co.*, 87 F. 418, 420 (C.C.N.D.N.Y. 1898) ("[T]he term 'managing agent' is found associated with 'president,' 'secretary,' 'clerk,' 'cashier,' 'treasurer' and 'director,' and it is to be presumed that the lawmakers intended to describe an agent possessing powers analogous to those of the executive officers of the corporation.").

¶33 In sum, we conclude that the court of appeals erred in rejecting the district court's interpretation of the term "managing or general agent" as used in rule 4(d)(1)(E). We interpret that term to refer to a person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal.

## II. THIS COURT'S PRECEDENT DOES NOT SUPPLANT THE PLAIN MEANING OF RULE 4(d)(1)(E)

¶34 The court of appeals reached a different conclusion from the one we reach above based on its interpretation of our precedent. The court looked past the plain language interpretation articulated by the district court and instead crafted a standard derived from statements we made in *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and *In re Schwenke*, 2004 UT 17, 89 P.3d 117. While we appreciate the court's efforts to draw meaning from these cases, neither case interpreted the meaning of "managing or general agent" as used in rule 4(d)(1)(E). Thus, neither case controls.

¶35 We begin with *Beard.* The *Beard* court analyzed whether the evidence supported the conclusion that "a proper person" was served under the predecessor to rule 4(d)(1)(E).[7] 336 P.2d at 125–26. The plaintiff argued that service was effective because "the foreman in charge" of the defendant corporation was served. *See id.*

---

[7] The predecessor to rule 4(d)(1)(E) cited in *Beard* provided that service could be made upon a corporation by delivering a copy of a complaint and summons to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *Beard*, 336 P.2d at 125 n.1 (quoting UTAH R. CIV. P. 4(e)(4) (1959)). The rule also provided that "[i]f no such officer or agent c[ould] be found in the county in which the action [was] brought," service could be made "upon any such officer or agent, or any clerk, cashier, managing agent, chief clerk, or other agent having the management, direction or control of any property of such corporation, partnership or other unincorporated association within the state." UTAH R. CIV. P. 4(e)(4) (1959). Further, if none of the identified agents could be "found in the state," and the defendant advertised or held itself out as having an office in or doing business in the state, service could be made upon "the person doing such business or in charge of such office or place of business." *Id.*

at 126. But the court rejected that claim, concluding that the evidence did not support that the person served was the foreman. *Id.* In other words, as Judge Oliver observed in her dissent, the *Beard* court did not analyze whether service on the foreman would satisfy rule 4. *See Griffin v. Snow Christensen & Martineau*, 2023 UT App 88, ¶ 40, 536 P.3d 91 (Oliver, J., dissenting). Instead, the court's decision turned on its assessment of the evidence and its view that the person served was not the foreman. *See Beard*, 336 P.2d at 126. That determination tells us little about the meaning of the rule.

¶36 Further, even *Beard*'s introductory discussion about the nature of persons who may be properly served under the predecessor to rule 4(d)(1)(E) sheds little light on the meaning of "managing or general agent" because the court did not identify what part of the rule it was purporting to analyze. *See id.* at 125–26.

¶37 The *Beard* court quoted the provision applicable to service on corporations in its entirety and then made two observations. It stated that "[u]nder that rule the person served must be more than a mere employee." *Id.* at 126. It also stated that the individual "must be in charge of some of [the corporation's] property, operations, business activities, office, place of business or in some manner be responsible for or have control over its affairs." *Id.* But the *Beard* court never tied these observations to any particular part of the rule, and there is no indication in the opinion that the court was purporting to opine specifically on the meaning of "managing or general agent."[8] Thus, the case has limited application here.

¶38 At most, *Beard* tells us that those identified as capable of accepting service for a corporation under rule 4(d)(1)(E) must be

---

[8] The *Beard* opinion frames the question presented as whether "an authorized agent" was served. *See* 336 P.2d at 125. But it doesn't appear that the court was intending to apply the part of the rule allowing for service on an individual "authorized by appointment or by law to receive service of process." *See generally id.* at 125 n.1 (cleaned up); *see also* UTAH R. CIV. P. 4(e)(4) (1959). If we can draw any clues from the language used, it appears the court may have been considering whether the individual served was one identified in the latter part of the rule. *See* UTAH R. CIV. P. 4(e)(4) (1959) (allowing for service on an individual who is in "control of" or "in charge of" the defendant's "place of business" when an officer or a managing, general, or authorized agent can't be found in the county or state).

more than "mere employee[s]." *See id.* But being more than "a mere employee" does not equate to being an officer, a managing or general agent, or an agent authorized by law or appointment to accept service. In other words, some individuals may have positions and responsibilities that elevate their status beyond "mere employee." But that elevated status does not qualify them to accept service on the corporation's behalf unless they otherwise meet the rule's requirements.

¶39 The second case relied on by the court of appeals is *In re Schwenke*, 2004 UT 17. *See Griffin*, 2023 UT App 88, ¶¶ 30–31, 36. In *Schwenke*, as in *Beard*, this court recited the language of the relevant rule, but ultimately it did not interpret the term "managing or general agent." *See* 2004 UT 17, ¶¶ 23–28. Instead, the court asked whether service of a bar reinstatement petition on the common-area receptionist at the Law and Justice Center triggered the sixty-day time limit for the Office of Professional Conduct (OPC) to file its response. *Id.* ¶¶ 3, 28.

¶40 In addressing this question, the *Schwenke* court cited cases from other jurisdictions involving service on a receptionist. *See id.* ¶¶ 24–25. The court's first set of cases exemplified situations where service on a receptionist did not satisfy rule-based service requirements. *See id.* ¶ 24. The second set of cases provided counterexamples of effective service through a receptionist. *See id.* ¶ 25. The *Schwenke* court also quoted, without comment, the Ninth Circuit's view that "'[t]he rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice,' and the court will look at various factors to ensure that the service is fair in light of all the surrounding circumstances." *Id.* (alteration in original) (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)).

¶41 The court then turned to the facts of the case before it. Noting that the receptionist who received service was "not supervised or employed by the OPC," that she was not authorized to accept service on behalf of the OPC, that her job did not include delivering documents to the OPC, and that "the process server received no assurances" from the receptionist that the papers would be delivered to the OPC, the court concluded that "[u]nder

the circumstances of this case," service on the receptionist "did not constitute effective service of process."[9] *Id.* ¶¶ 26, 28.

¶42 The court of appeals read the *Schwenke* decision as "direct[ing] courts to apply" rule 4(d)(1)(E) "in a manner that will best effectuate its purpose of giving the defendant adequate notice, such that service would be considered fair in light of all the surrounding circumstances." *Griffin*, 2023 UT App 88, ¶ 36 (cleaned up). But, as Judge Oliver observed, the *Schwenke* court did not endorse the observation made by the Ninth Circuit. *Id.* ¶ 43 & n.7 (Oliver, J., dissenting) (citing *Schwenke*, 2004 UT 17, ¶ 25). Nor did it apply it. *See Schwenke*, 2004 UT 17, ¶ 28. And the *Schwenke* court did not direct that the rule could be satisfied by simply placing the complaint into the hands of any employee "who plays an 'integrated' role in a company and would be positioned to put a complaint into the right hands." *Griffin*, 2023 UT App 88, ¶ 36 (majority opinion) (quoting *Schwenke*, 2004 UT 17, ¶ 25). Thus, *Schwenke*'s observations do not modify the plain meaning of rule 4(d)(1)(E).

¶43 In sum, this is the first case where we have been called upon to interpret the term "managing or general agent" in rule 4(d)(1)(E), and we adhere to its plain terms. *See supra* ¶¶ 29–33. We thus reject the standard applied by the court of appeals as derived from *Beard* and *Schwenke*, and we adopt the definition applied by the district court. *See supra* ¶ 33.

III. CHAPMAN WAS NOT A MANAGING OR GENERAL AGENT UNDER RULE 4(d)(1)(E)

¶44 Applying rule 4(d)(1)(E) of the Utah Rules of Civil Procedure to the present case, Chapman was not a managing or general agent of SCM. As we've explained, a managing agent or general agent is a "person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." *See supra* ¶ 33. While Chapman undoubtedly played an important role as SCM's administrator and worked closely with firm

---

[9] Although the *Schwenke* court began by citing rule 4(d)(1)(E), it never suggested that the receptionist, who was not even employed by the OPC, fit into any of the categories of persons eligible to accept service of process for a corporation under the rule. *See* 2004 UT 17, ¶¶ 3, 21–28.

executives and management, the district court's unchallenged factual findings undermine any suggestion that she was vested with general power involving the exercise of judgment and discretion.

¶45 The court found Chapman was not free to control SCM's property, operations, business activities, office, or affairs on her own. *Supra* ¶ 9. It also found that Chapman worked under the direction and control of SCM's president, executive committee, board of directors, and other firm committees. *Supra* ¶ 8. And although she attended committee meetings where decisions were made, she was not given a vote in those decisions. *Supra* ¶ 8. Thus, Chapman was an ordinary agent lacking the authority under rule 4(d)(1)(E) to accept service on behalf of SCM, and the court of appeals erred in reversing the district court's dismissal of Griffin's complaint for lack of jurisdiction.

## CONCLUSION

¶46 We hold that the court of appeals erred in concluding that Chapman was a managing or general agent under rule 4(d)(1)(E) of the Utah Rules of Civil Procedure.

¶47 The court of appeals relied heavily on our decisions in *Beard v. White, Green & Addison Associates, Inc.*, 336 P.2d 125 (Utah 1959), and *In re Schwenke*, 2004 UT 17, 89 P.3d 117, to determine that Chapman was SCM's managing or general agent. But neither case interpreted that term, and our observations in those cases do not supplant the plain language of the rule. Instead, in accordance with the rule's text, we conclude that a managing or general agent for purposes of rule 4(d)(1)(E) is a person with general power involving the exercise of judgment and discretion.

¶48 We further conclude that Chapman was not SCM's managing or general agent. Although Chapman played an important role in the firm as an administrator, she did not have general power involving the exercise of judgment or discretion. Accordingly, SCM was not properly served. We therefore reverse the court of appeals' decision and remand this case to it for further proceedings.

---